1  **BOUTIN JONES INC.**
   Robert D. Swanson SBN 162816
2  Amy L. O'Neill SBN 294458
   Shea J. Kenny SBN 305068
3  555 Capitol Mall, Suite 1500
   Sacramento, CA 95814-4603
4  T: (916) 321-4444/F: (916) 442-7597

5  **DLA PIPER LLP (US)**
   Norman M. Leon (Illinois SBN 6239480)
6   *(admitted pro hac vice)*
   203 North LaSalle Street, Suite 1900
7  Chicago, Illinois 60601
   T: (312) 368-4000/F: (312) 236-7516
8
   **DLA PIPER LLP (US)**
9  Karen C. Marchiano (SBN 233493)
   2000 University Avenue
10 East Palo Alto, CA  94303
   T: (650) 833-2170/F: (650) 833-2001
11
   Attorneys for Defendant and Counter-Claimant
12 Country Visions, Inc.

13            **IN THE UNITED STATES DISTRICT COURT**

14            **EASTERN DISTRICT OF CALIFORNIA**

15
   JOLI GRACE, LLC, a Louisiana Limited          | **Case No.  2:16-cv-01138-WBS-EFB**
16 Liability Company,

17                          Plaintiff,            **MEMORANDUM OF POINTS AND
                  v.                              AUTHORITIES IN OPPOSITION TO
18                                                MOTION TO DISMISS
   COUNTRY VISIONS, INC., a California           COUNTERCLAIM
19 corporation,

20                          Defendant.           **Date:    October 31, 2016**
   _____          **Time:    1:30 p.m.**
21                                                **Dept:    5, 14th Floor**
   AND RELATED CROSS ACTIONS.                    **Judge:   Hon. William B. Shubb**
22

23

24

25

26

27

28

1

<u>**TABLE OF CONTENTS**</u>

2
<u>**Page**</u>

3

4
I.      INTRODUCTION...................................................................................................1

5

II.     FACTUAL BACKGROUND .................................................................................3

6

7       A.      Art and Stacie Lancaster Become Franchisees of CVI. .............................3

8       B.      Art and Stacie Lancaster Form Love Grace in Order to Open Their Competing

9               Clothing Stores ...........................................................................................4

10
III.    ARGUMENT ..........................................................................................................9

11
        A.      This Court Has Personal Jurisdiction Over All Counter-Defendants ................9

12

13              1.      Personal Jurisdiction Generally.......................................................9

14              2.      Joli Grace and Stacie Lancaster are Subject to This Court's Jurisdiction..............11

15              3.      Love Grace and Art Lancaster are Subject to This Court's Jurisdiction as

16                      Alter Egos of Joli Grace and Stacie Lancaster .......................................11

17                      a.      Personal Jurisdiction and Alter Ego Liability ..................................12

18

19                      b.      The Evidence Here Is Sufficient for a *Prima* Facie Showing That Art

20                              Lancaster and Love Grace are Alter Egos of Stacie Lancaster and

21                              Love Grace ........................................................................15

22                      c.      Counter-Defendants' Evidence is Limited, Conclusory and Contradicted by

23                              CVI's Evidence ................................................................16

24                      d.      Failure to Find that Art Lancaster and Love Grace are the Alter Egos of

25                              Joli Grace and Stacie Lancaster Would Result in Fraud and Injustice ...........18

26

27

28

4.   This Court Has Jurisdiction Over The Stacie Lancaster Children's Trust and Christine Thornhill as Trustee of the Trust Because They Are Subject to the Forum Selection Clauses in the Franchise Agreements ...........................................18

B.   CVI Has Alleged Sufficient Facts to State its Claims and With Sufficient Particularity to Meet the Applicable Pleading Standards; Thus, the Court Should Deny Counter-Defendants' 12(b)(6) Motion in its Entirety. ....................................................21

1.   CVI Makes a *Prima Facie* Showing that Joli Grace, Stacie Lancaster, Love Grace, and Art Lancaster are Alter Egos; Thus, Counter-Defendants' Arguments at Sections C and D Must Also Be Denied. ..................................................21

2.   The Economic Loss Rule Does Not Bar CVI's Fraud Claim. ...............................23

3.   CVI Has Alleged Facts with Sufficient Particularity with Regard to Its Lanham Act and Unfair Competition Claims; Thus, Counter-Defendants' Arguments at Sections F and G Must Be Denied. ........................................................24

a.   CVI Has Alleged Sufficient Facts, and With Sufficient Particularity In Support of Claim VII (Lanham Act Claim) ...................................................24

b.   CVI's California and Louisiana Unfair Competition Law Claims Are Pleaded With Sufficient Particularity to Meet the Heightened Pleading Standards ....26

4.   CVI Has Alleged Sufficient Facts In Support of Its Tortious Interference With Contract Claim ......................................................................................28

5.   This Court has Specific Jurisdiction over Art Lancaster and Love Grace in Connection with their Tortious Actions Directed at a CVI, a California Entity.....29

6.   CVI Has Properly Alleged an Accounting Claim Because Counter-Defendants Completely Control the Information Needed to Determine What Damages Are Owed. ......................................................................................30

IV.   CONCLUSION ...................................................................................................31

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*721 Bourbon, Inc. v. B.E.A., Inc.*
No. 11-710, 2011 WL 3747231 (E.D. La. Aug. 25, 2011) .............................................28

*Aas v. Superior Court*
24 Cal. 4th 627 (2000) ...............................................................................................23

*Amer. Machinery Movers, Inc. v. Machinery Movers of New Orleans, LLC*
136 F. Supp. 2d 599 (E.D. La. 2001) ..........................................................................28

*Applied Info. Scis. Corp. v. eBay, Inc.*
511 F.3d 966 (9th Cir. 2007) ......................................................................................24

*Aschroft v. Iqbal.*
556 U.S. 662 (2009) ...................................................................................................21

*Associated Vendors, Inc. v. Oakland Meat Co., Inc.*
210 Cal. App. 2d 825 (1962) ......................................................................................13

*AT & T v. Compagnie Bruxelles Lambert*
94 F.3d 586 (9th Cir. 1996) ................................................................10, 12, 13, 16

*Ballard v. Savage*
65 F.3d 1494 (9th Cir. 1995) ......................................................................................10

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*
223 F.3d 1082 (9th Cir. 2000) ....................................................................................10

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) ...................................................................................................21

*Brosnan v. Tradeline Solutions, Inc.*
No. C-08-0694 JCS, 2009 WL 1604572(N.D. Cal. June 5, 2009)................................25, 26

*Burger King Corp. v. Rudzewicz*
471 U.S. 462 (1985) ...........................................................................................11, 29

*Cahill v. Liberty Mut. Ins. Co.*
80 F.3d 336 (9th Cir. 1996) ........................................................................................21

*Cal-State Business Products & Services, Inc. v. Ricoh*
12 Cal.App.4th 1666 (1993) .......................................................................................11

*Cellars v. Pacific Coast Packaging, Inc.*
189 F.R.D. 575 (N.D. Cal. 1999) ................................................................................23

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*
20 Cal.4th 163 (1999) ................................................................................................27

*Century. 21 Real Estate Corp. v. Sandlin*
846 F.2d 1175 (9th Cir. 1988) ....................................................................................24

*Certified Bldg. Products, Inc. v. N.L.R.B.*
  528 F.2d 968 (9th Cir. 1976) ..................................................................................12

*CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*
  479 F.3d 1099 (9th Cir. 2007) ..............................................................................28

*Doe v. Unocal Corp.*
  248 F.3d 915 (9th Cir. 2001) ................................................................................12

*EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*
  711 F.Supp.2d 1074 (C.D. Cal. 2010)..................................................................25

*Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*
  103 F.3d 888 (9th Cir. 1996) ..................................................................................9

*Firstmark Capital Corp. v. Hempel Fin. Corp.*
  859. F.2d 92 (9th Cir. 1988) ...........................................................................21, 22

*Flynt Distributing Co., Inc. v. Harvey*
  734 F.2d 1389 (9th Cir. 1984) .........................................................................14, 17

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*
  284 F.3d 1114 (9th Cir. 2002) ..............................................................................10

*Hall-Magner Grp. v. Firsten*
  No. 11-CV-312 JLS POR, 2011 WL 5036027 (S.D. Cal. Oct. 24, 2011).......................12, 18

*Hamdan v. Tiger Brothers Food Mart, Inc.*
  No. 15-00412-BAJ-EWD, 2016 WL 1192679 (M.D. La March 22, 2016) ....................................28

*Harris Rutsky & Co., Ins. Services, Inc. v. Bell & Clements, Ltd.*
  328 F.3d 1122 (9th Cir. 2003) ..............................................................................10

*Hitachi Med. Sys. Am., Inc. v. Branch*
  2010 WL 816344 (N.D. Ohio Mar. 4, 2010)..........................................................13

*In re Bennett Funding Group, Inc.*
  259 B.R. 243 (2001) ..............................................................................................19

*Int'l Shoe Co. v. Washington*
  326 U.S. 310 (1945) ..............................................................................................10

*Janis v. Cal. State Lottery Com.*
  68 Cal.App.4th 824 (1998) ....................................................................................30

*Jefferson v. Chevron U.S.A. Inc.*
  713 So.2d 785 (La. Ct. App. 1998) ........................................................................28

*Kritzer v. Lancaster*
  96 Cal.App.2d 1 (1950) .........................................................................................30

*Kwikset Corp. v. Super. Ct.*
  51 Cal.4th 310 (2011)............................................................................................26

*Leek v. Cooper*
  194 Cal.App.4th 399 (2011) ..................................................................................21

*Lozano v. AT&T Wireless Servs., Inc.*
  504 F.3d 718 (9th Cir. 2007) ...........................................................................27

*Lu v. Dryclean-U.S.A. of Cal., Inc.*
  11 Cal.App.4th 1490 (1992) ...............................................................11, 19, 20

*Marine Midland Bank, N.A. v. Miller*
  664 F.2d 899 (2d Cir. 1981) ......................................................................13, 16

*Mavrix Photo, Inc. v. Brand Techs., Inc.*
  647 F.3d 1218 (9th Cir. 2011) ..........................................................................10

*Net2Phone, Inc. v. Superior Court*
  109 Cal.App.4th 583 (2003) ................................................................11, 19, 20

*NuCal Foods, Inc. v. Quality Egg LLC*
  918 F.Supp.2d 1023 (E.D. Cal. 2013) ..............................................................23

*Obesity Research Institute, LLC v. Fiber Research International, LLC*
  165 F.Supp.3d 937 (S.D. Cal. 2016) .................................................................27

*Patin v. Thoroughbred Power Boats Inc.*
  294 F.3d 640 (5th Cir. 2002) ............................................................................12

*Pedersen v. Greenpoint Mortg. Funding, Inc.*
  No. 2:11-CV-00642-KJM, 2013 WL 3992245 (2011) .....................................23

*Pelican Communications, Inc. v. Schneider*
  No. C–14–4371 EMC, 2015 WL 527472 (N.D. Cal. Feb. 6, 2015) ...................10, 13, 16

*Plascencia v. Lending 1st Mortg.*
  583 F.Supp.2d 1090 (N.D. Cal. 2008) ..............................................................27

*Ranza v. Nike, Inc.*
  793 F.3d 1059 (9th Cir. 2015) ..........................................................................12

*Robinson Helicopter Co., Inc. v. Dana Corp.*
  34 Cal.4th 979 (2004) .......................................................................................23

*Smith, Valentino & Smith, Inc. v. Superior Court*
  17 Cal.3d 491 (1976) ........................................................................................20

*Sys. Div., Inc. v. Teknek Elecs., Ltd.*
  253 Fed.Appx. 31 (Fed. Cir. 2007) ...................................................................12

*Teselle v. McLoughlin*
  173 Cal.App.4th 156 (2009) .............................................................................30

*Transamerica Corp. v. Compana, LLC.*
  No. C 05-00549MJJ, 2005 WL 2035594 (N.D. Cal. Aug. 22, 2005) ...............12

*TransFresh Corp. v. Ganzerla & Assoc., Inc.*
  862 F.Supp.2d, 1009 (N.D. Cal. 2012) ............................................................25

*United Guar. Mortg. Indem. Co. v. Countrywide Financial Corp.*
  660 F.Supp.2d 1163 (C.D. Cal. 2009) ..............................................................23

*Vance's Foods, Inc. v. Special Diets Europe Ltd.*
  No. 2:11-cv-02943-MCE-GGH, 2012 WL 1353898 (E.D. Cal. Apr. 16, 2012)........................14, 17

*Vess v. Ciba-Geigy Corp. USA*
  317 F.3d 1097 (9th Cir. 2003) .........................................................................................25

*Virtualmagic Asia, Inc. v. Fil–Cartoons, Inc.*
  99 Cal.App.4th 228 (2002) ..............................................................................................13

*WorldWide Volkswagen Corp. v. Woodson*
  444 U.S. 286 (1980) ........................................................................................................10

**Statutes**

CAL. BUS & PROF. CODE § 17200 ....................................................................................17

CAL. CODE CIV. PROC. § 410.10 ........................................................................................9

CAL. PRAC. GUIDE CIV. PRO. BEFORE TRIAL Ch. 3-B ......................................................19

FED. R. CIV. PROC. § 8(e)(2).............................................................................................23

FED. R. CIV. PROC. § 12(b)(6) ..........................................................................................21

**Other Authorities**

1A CORPUS JURIS SECUNDUM (2005) ACCOUNTING, § 6, p. 7.........................................30

1A CORPUS JURIS SECUNDUM (2005) ACCOUNTING, § 26, p. 26.....................................30

Lanham Act.........................................................................................................................28

Louisiana Unfair Trade Practices Act ................................................................................28

1      Counter-claimant Country Visions, Inc. ("CVI") hereby submits this Opposition to Counter-

2  Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6)

3  ("Motion").

4  **I.      INTRODUCTION**

5      Given their most recent actions, it is quite remarkable that Counter-Defendants continue to

6  press the case that this Court does not have jurisdiction over Art Lancaster and Love Grace.  Indeed,

7  their continued assertion borders on the frivolous.  The evidence is overwhelming that Counter-

8  Defendants are a single enterprise and subject to this Court's jurisdiction.

9      In 2009, Stacie Lancaster, and her husband Art Lancaster were interested in opening a

10  women's clothing boutique.  However, the Lancasters did not have any experience with women's

11  clothing boutiques and were not ready to risk the resources necessary to start an independent boutique

12  from scratch.  The Lancasters therefore decided to learn how to successfully operate women's

13  clothing boutiques by becoming franchisees in an established franchise system: namely, CVI's

14  Apricot Lane.  With CVI's support and assistance, the Lancasters became enormously successful.  In

15  fact, less than six years after they signed their first Apricot Lane franchise agreement, the Lancasters

16  amassed 10 Apricot Lane boutiques in four different states (Louisiana, Alabama, Mississippi, and

17  Missouri).  All of these franchises were owned by an entity they formed named Joli Grace, LLC ("Joli

18  Grace").  Joli Grace is the Plaintiff in this action. Joli Grace entered into separate franchise

19  agreements for each of the Lancaster's stores.  Under these franchise agreements, the Lancasters

20  committed to stay in the Apricot Lane system, and to pay royalties and other fees due under their

21  agreements, through 2024.

22      As CVI sets forth in detail in its Motion for Preliminary Injunction (set to be heard by this

23  Court on November 14), despite the immense success they experienced with their Apricot Lane

24  stores, in April of this year Joli Grace stopped paying the monies due to CVI under the franchise

25  agreements.  CVI recently discovered why.  Having learned from CVI how to successfully operate

26  women's clothing boutiques, the Lancasters have been secretly developing a competing chain of

27  boutiques which they call Blu Spero.  The Lancasters' Blu Spero boutiques not only sell the same

28  brands and types of merchandise as Apricot Lane boutiques, but in many instances offer the very

1   same items.  While the Lancasters previously claimed that a different entity – Love Grace Holdings,

2   Inc. ("Love Grace") – owned the Blu Spero stores and that Joli Grace and Stacey Lancaster (who

3   were prohibited by their franchise agreements from operating a competitive system) had nothing to do

4   with Blu Spero, they have now dropped any pretense of separation between these entities.  Indeed,

5   despite their repeated representations (to this Court and others) that these systems were completely

6   separate, the Lancasters have now begun to systematically convert their Apricot Lane franchise stores

7   to Blu Spero stores.

8        It is readily apparent why the Lancasters set up Love Grace.  It is a sham to circumvent the

9   non-compete obligations of the franchise agreements with CVI at issue in this litigation.  Indeed, in an

10   effort to get out of their obligations under the franchise agreements, Joli Grace filed suit in this Court

11   against CVI seeking a declaration that Joli Grace and Stacie Lancaster are not bound by the franchise

12   agreements with CVI.   At almost the exact same time, Love Grace and its putative owner (Art

13   Lancaster, Stacie Lancaster's wife) filed suit in federal court in Louisiana claiming that they were

14   separate entities and therefore not bound by the obligations in those franchise agreements.  Having

15   uncovered evidence that Love Grace was a sham corporation and that Art and Stacie were effectively

16   running their Apricot Lane and Blu Spero boutiques as a single enterprise, CVI filed an Answer and

17   Counterclaim, pleading claims against Joli Grace, Love Grace, Art Lancaster, and Stacie Lancaster

18   (collectively the "Counter-Defendants") related to their unlawful and duplicitous actions.

19        Counter-Defendants moved to dismiss.  In response, on September 15, 2016, CVI filed a First

20   Amended Counterclaim ("FAC"), adding the Stacie Lancaster Children's Trust and Christine

21   Thornhill as trustee of the Stacie Lancaster Children's Trust as Counter-Defendants.  The FAC also

22   adds new claims for declaratory relief, accounting, and further breach of franchise agreement and

23   Lanham Act claims.  Lastly, new allegations were added to support the new claims, and additional

24   allegations were added to support the existing claims.

25        By way of their motion, Counter-Defendants seek to have the counterclaims against Art

26   Lancaster, Love Grace, Christine Thornhill and the Stacie Lancaster Children's Trust dismissed from

27   this case for lack of personal jurisdiction and for failure to state claim. Counter-Defendants also seek

28   to have additional claims against all Counter-Defendants dismissed for failure to state a claim and/or

1    failure to plead with the requisite particularity.

2         However, as alter egos of Stacie Lancaster and Joli Grace, Art Lancaster and Love Grace are

3    subject to this Court's personal jurisdiction to the same extent as Stacie Lancaster and Joli Grace.

4    Christine Thornhill and the Stacie Lancaster Children's Trust are likewise subject to this Court's

5    personal jurisdiction as they are bound by the forum selection clauses in the Franchise Agreements

6    entered into by Stacie Lancaster on behalf of Joli Grace.

7         Lastly, Counter-Defendants' arguments that CVI has failed to adequately plead its claims are

8    similarly incorrect.  The claims against Art Lancaster and Love Grace are premised on alter-ego

9    liability.  Because CVI has submitted evidence sufficient to establish a *prima facie* case of alter ego

10   liability, the Court should deny Counter-Defendants' 12(b)(6) motion as it pertains to claims against

11   Art Lancaster and Love Grace.  Further, with respect to CVI's remaining claims against Counter-

12   Defendants, the Motion should be denied because CVI has pled facts sufficient to state a claim and

13   with the requisite particularity required to meet the applicable pleading standards.

14        Thus, the Court should deny Counter-Defendants' Motion in its entirety.

15   **II.    FACTUAL BACKGROUND**

16        CVI is a California corporation with its headquarters and principal place of business in

17   Vacaville, California.  (Declaration of Kenneth Petersen in Support of CVI's Opposition to Motion to

18   Dismiss ("Petersen Decl.") at ¶ 2.)  CVI is engaged in the business of granting franchises to qualified

19   persons to operate Apricot Lane boutiques, which sell women's fashion apparel, accessories, and

20   jewelry, among other items.  (Petersen Decl. at ¶ 3.)

21        **A.    <u>Art and Stacie Lancaster Become Franchisees of CVI.</u>**

22        In 2009, both Stacie and Art Lancaster approached CVI about becoming Apricot Lane

23   franchisees.  (Petersen Decl. at ¶ 4; Counterclaim ¶ 1)  Both Stacie and Art Lancaster were actively

24   involved in the initial process of applying for and obtaining an Apricot Lane franchise, and both have

25   been involved in the operation of their Apricot Lane franchises.  (Petersen Decl. at ¶¶ 4-5; *see also*

26   Counterclaim ¶¶ 1-3.)  In May of 2009, CVI and Joli Grace entered into a franchise agreement for the

27   Mall of Louisiana in Baton Rouge, Louisiana.  (Petersen Decl. at ¶ 4; Counterclaim ¶ 19.)  The

28   Lancasters subsequently opened nine additional Apricot Lane boutiques through Joli Grace, entering

1   into separate franchise agreements for each store (the "Franchise Agreements").  (*Id.*)

2         Although the Franchise Agreements were entered into by Stacie Lancaster on behalf of Joli

3   Grace, both Stacie and Art Lancaster have been actively involved in the operation of their Apricot

4   Lane franchises from the beginning.  (Petersen Decl. at ¶¶ 5-7; Counterclaim ¶¶ 1-7.)  Stacie has

5   taken the lead on day-to-day retail responsibilities.  (Petersen Decl. at ¶ 5.)  For example, Stacie

6   attends buying trips for the Apricot Lane business.  (Petersen Decl. at ¶ 5; Counterclaim ¶ 25.)  Art

7   has taken the lead on financial aspects and has been CVI's primary contact person for new stores,

8   construction, and late royalty issues.  (Petersen Decl. at ¶¶ 6-7; Counterclaim ¶¶ 25-26.)  For example,

9   in an email exchange between Ken Petersen, CEO of CVI, and Art Lancaster regarding the finances

10  of the Apricot Lane boutiques operated by Joli Grace, Art Lancaster wrote on July 23, 2013, "[g]oing

11  forward **we** are not opening and [*sic*] new stores so this should not be a problem since capital

12  expenditures of opening new stores will no longer be an issue."  (Petersen Decl. at ¶ 6 (emphasis

13  added); Counterclaim ¶ 26.)  In late 2014, when Petersen emailed Art in connection with past due

14  royalties, Art responded in an email dated October 7, 2014 that "it is not a problem **we** will be caught

15  up by the end of the year, and stay current from this point on."  (Petersen Decl. at ¶ 7 (emphasis

16  added); Counterclaim ¶ 27.)  There are copious emails between CVI and Art Lancaster in which Art

17  Lancaster represents Joli Grace.  (Petersen Decl. at ¶ 6.)  Art has also guaranteed leases for the

18  Lancasters' Apricot Lane business, and is the registrant for JoliGrace.com.  (Petersen Decl. at ¶ 5;

19  Counterclaim ¶ 25.)  Moreover, Joli Grace's December 5, 2015 balance sheet lists a $93,835.43 credit

20  card liability for "AMEX – (Art)."  (Petersen Decl. at ¶ 15; Counterclaim ¶ 42.)  In addition, Art has

21  jointly owned property with Joli Grace. In July 2015, Art and Joli Grace registered a 2013

22  Volkswagon Passat, of which they are joint owners.  (Petersen Decl. at ¶ 16; Counterclaim ¶ 42.)

23        **B.     Art and Stacie Lancaster Form Love Grace in Order to Open Their Competing
24               Clothing Stores**

25        In or about April 2015, the Lancasters secretly opened their first Blu Spero store, despite the

26  fact that the Franchise Agreements and Personal Guarantees signed by Stacie Lancaster expressly

27  prohibit Joli Grace and Stacie Lancaster from owning, engaging in or having any interest in any

28  business "that sells through any channel of distribution of [*sic*] any of the types of merchandise that

are the same as or similar to the types of merchandise being sold through the Specialty Stores, unless granted prior approval in writing."  (Petersen Decl. at ¶ 8; Franchise Agreement, attached as Exhibit A to Petersen Decl; Counterclaim ¶¶ 3, 29, & 148.)

Blu Spero is owned by Love Grace. (Counter-Defendants' Motion at p. 2.)

CVI first learned of Blu Spero when it received an anonymous note from a former employee of one of the Lancasters' Apricot Lane stores which stated as follows:

> I used to work for Apricot Lane.  I know the Lancasters have a franchise agreement. They have gotten greedy and have schemed to get out of your contract to open their own and franchises.  They have been planning for a year.  I hope this helps your organization against them.  Art and Ms. Stacey [sic] think they can fool your org to get out of the agreement.  They think they are all that and some.  They have people working at both organizations and promoted some to work at the new place.  Since a group in Dallas got out of their agreement, the Lancasters think they can also.  Beware they are con artists and talk a big game.  They opened in April.

(Petersen Decl. at ¶ 9; Counterclaim ¶ 30.)

Subsequently, CVI uncovered evidence that although Love Grace is nominally owned by Art Lancaster, there is no real distinction between Love Grace and Joli Grace, and Art and Stacie Lancaster exercise control over both entities. For example, Stacie Lancaster has been involved with Love Grace and Blu Spero from the beginning.  (Petersen Decl. at ¶¶ 12-13; Counterclaim ¶ 39.)  The Lancasters released a press release entitled "Blu Spero Clothing Boutique to Open" which identifies Stacie Lancaster as the "founder" of Blu Spero. (Petersen Decl. at ¶ 12; Counterclaim ¶ 39.)  Stacie Lancaster has also had her own telephone extension at Love Grace.  (Petersen Decl. at ¶ 13; Counterclaim ¶ 40.)  Calling Love Grace has resulted in the following voice prompt: "to speak with Stacie, press 2."  (Id.)  Then, pressing 2 has resulted in the following message: "You have reached Stacie Lancaster with Love Grace.  Please leave a message and I'll return your call."  (Id.)

In addition, Love Grace shares a common office with Joli Grace.  (Petersen Decl. at ¶ 17; Counterclaim ¶ 45.)  Love Grace and Joli Grace have filed documents with the States of Florida and Louisiana, respectively, which provide the same principal office address: 9100 Bluebonnet Centre Blvd, Suite 401, Baton Rouge LA 70809.  (Petersen Decl. at ¶ 17; Counterclaim ¶ 45.)  Joli Grace and Love Grace also have common employees.  (Petersen Decl. at ¶ 18; Counterclaim ¶ 48.)  Indeed, the two entities have shared several managers as well as marketing employees.  (Id.)

The entities commingle funds and other assets, and have failed to segregate funds. As discussed above, Joli Grace's December 5, 2015 balance sheet lists a $93,835.43 credit card liability for "AMEX – (Art)".  (Petersen Decl. at ¶ 15; Counterclaim ¶ 42.)  It also contains a liability line item of $51,675.94 as "due to related parties – CP". *Id.* It also contains a line item credit card liability for "Lancaster Const Visa."  (*Id.*)  It also lists "other current assets" of $1,177,029.47 as "due from related parties."  (*Id.*)  In addition, on April 28, 2016, Robert Johnson of "Lancaster & Associates," located at 9100 Bluebonnet Centre, Suite 401 (the address for Joli Grace and Love Grace, as well as Lancaster & Associates), emailed Ken Petersen, requesting that CVI execute documents to enable the Lancasters to refinance loans, ostensibly in connection with the Lancasters' Apricot Lane business.  (Petersen Decl. at ¶ 14; Counterclaim ¶ 42.)  CVI was not aware of any preexisting loans for the Lancasters' Apricot Lane business or the reason for the need to refinance.  (*Id.*) As it turns out, at the time of the email the Lancasters were expanding their Blu Spero business, but not their Apricot Lane business.   (*Id.*)   It appears the Lancasters were attempting to pull money out of their Apricot Lane business and put it into their Blu Spero business.

Further, the Lancasters' Blu Spero boutiques are an obvious attempt to replicate Apricot Lane boutiques.  Blu Spero stores are constructed, designed, stocked, and displayed as though they were an Apricot Lane boutique.  (Declaration of Melinda Liming in Support of Opposition to Motion to Dismiss ("Liming Decl.") at ¶¶ 4-5; *see also* Counterclaim ¶ 108.)  The clothing sold at the Blu Spero stores is largely the same brands and styles as those sold at Apricot Lane stores.  (Liming Decl. at ¶ 4, Ex. 1; Petersen Decl. at ¶ 10; Counterclaim ¶¶ 3 & 32.)  Blu Spero boutiques have also been designed to mimic the appearance of an Apricot Lane boutique: they use the same sale signage scripted with "Customer Favorites" at the bottom, the same jewelry displays, the same garment fixtures, and the same brick slat wall.  (Liming Decl. at ¶ 5 & Ex. 1) Even more indicative of the joint nature by which the Lancasters treat the Apricot Lane and Blu Spero boutiques, Joli Grace's Apricot Lane boutiques have recently been found carrying merchandise that is tagged with a "Blu Spero" selling tag.  (Liming Decl. at ¶ 6, Exs. 2-4; Counterclaim ¶ 41.)

1    In addition, the Joli Grace Apricot Lane boutiques have ceased using CVI's Point of Sale

2  ("POS") system which tracks sales and merchandise.  (Liming Decl. at ¶¶ 7-8; Petersen Decl. at ¶ 23,

3  Ex. Q; Counterclaim ¶¶ 65.i. & 156-157.) Use of CVI's POS system is required under the Franchise

4  Agreements. (Counterclaim ¶¶ 20-21, Exs A-J.) Instead, the Joli Grace Apricot Lane boutiques and

5  the Love Grace Blu Spero boutiques are now using the same POS system.  (Liming Decl. at ¶¶ 7-8,

6  Ex. 5; Petersen Decl. at ¶ 23, Ex. Q; Declaration of Tayler Morgan in Support of Opposition to

7  Motion to Dismiss ("Morgan Decl.") at ¶¶ 3-5; Declaration of Sarah Martin in Support of Opposition

8  to Motion to Dismiss ("Martin Decl.") at ¶ 6, Ex. C.)

9    The Lancasters are now using their POS system to convert Apricot Lane customers.  For

10  example, the receipts for the purchase of merchandise from Joli Grace's Apricot Lane store in

11  Lafayette, Louisiana on September 9, 2016, says "Follow us on Social Media @ Blu Spero."

12  (Petersen Decl. at ¶ 22, Ex. P.)  Moreover, a customer shopping at the Lancasters' Apricot Lane

13  boutique in Spanish Fort, Alabama was asked by the sales personnel for her contact information so

14  that the customer's birthday information could be included in their system.  (Morgan Decl. at ¶¶ 3-4.)

15  Several weeks later, the customer received an email from Blu Spero claiming that the customer was

16  part of the Blu Spero "loyalty program" and was offered a discount on her next purchase as a birthday

17  reward.  (Morgan Decl. at ¶ 4.)  This was despite the fact that the customer had never shopped at a

18  Blu Spero store, never signed up to be a Blu Spero loyalty member, and had never given her

19  personal information to Blu Spero so as to be included on their mailing lists.  (Morgan Decl. at ¶

20  5.)

21    The Lancasters have also converted their "@loveapricotlane" Instagram page to a

22  @BlueSpero page. (Liming Decl. at ¶ 11.) Joli Grace previously maintained an Instagram page that

23  went by the username "@loveapricotlane." (Id.) It appears to have merged this page with its

24  @BluSpero Instagram account –the @loveapricotlane page no longer appears on Instagram and the

25  @BluSpero page claims 22 stores and shows roughly the same number of followers as the

26  @loveapricotlane Instagram page previously showed. (Id.) Likewise, Joli Grace has not posted

27  information on its Apricot Lane Facebook page since October 7, 2016. (Liming Decl. at ¶ 10.) Prior

28  to this date it regularly updated its Facebook page with information about its Apricot Lane stores and

1    merchandize. *Id.*

2           As of late, and most egregiously, the Lancasters have now begun converting their Joli Grace

3    Apricot Lane boutiques to Blu Spero boutiques.  For example, in May of 2009, CVI and Joli Grace

4    entered into a franchise agreement for an Apricot Lane boutique in the Turtle Creek Mall in

5    Hattiesburg, Mississippi.  (Petersen Decl. at ¶ 19; Counterclaim ¶ 20.g.)  Joli Grace and Stacie

6    Lancaster breached the Franchise Agreement by failing to pay royalties and failing to make

7    contributions to the Country Visions Advertising and Development Fund.  (Petersen Decl. at ¶ 19;

8    Counterclaim ¶¶ 6, 57-60.)  CVI terminated the Franchise Agreement.  *Id.*  However, rather than

9    comply with their post-termination obligations, the Lancasters continued to operate the store under

10   the Apricot Lane mark until at least August 26, 2016.  (Petersen Decl. at ¶¶ 19-20; Counterclaim

11   ¶ 60.)  CVI has recently discovered that the Lancasters have changed the name of the Hattiesburg

12   store to "Blu Spero."  (Petersen Decl. at ¶¶ 19-20; Martin Decl. at ¶¶ 2-4, Ex. A.)  Despite the name

13   change, the store layout, offerings, and items otherwise look the same.  (Martin Decl. at ¶¶ 3-5.)

14   Further, despite changing the name of the store to Blu Spero, the Lancasters continue to sell clothing

15   in the Hattiesburg store with "Apricot Lane" tags on it.  (Martin Decl. at ¶ 5, Ex. B; Petersen Decl. at

16   ¶ 20.)  Employees at the Hattiesburg store tell customers that "the name changed, but everything else

17   is the same" and that the clothing brands, jewelry, and other items are the same as they have always

18   been. (Martin Decl. at ¶ 4.)[1]

19          Continuing with this campaign of converting Apricot Lane boutiques to Blu Spero boutiques,

20   CVI has recently learned that the Lancasters have converted their Apricot Lane boutiques in Spanish

21   Fort, Alabama, and Mandeville, Louisiana, to Blu Spero boutiques.  There has been no termination of

22   the franchise agreements for these stores.  (Petersen Decl. at ¶ 20, Exs. N & O.)  The Spanish Fort

23   boutique, and seemingly the Mandeville boutique as well, continue to sell clothing tagged with the

24   Apricot Lane Mark despite the store having been wrongly converted from an Apricot Lane to a Blu

25   

26   [1]        On October 11, 2016, CVI filed a Motion for Preliminary Injunction seeking: 1) the turn-over of the
     Hattiesburg store and lease, 2) that Blu Spero be prohibited from operating in the Hattiesburg store location, and 3) that
27   Counter-Defendants be enjoined from use of the Apricot Lane Mark in the Hattiesburg store in light of the termination
     of the Hattiesburg Franchise agreement and right to use the Mark. The evidence and argument submitted in support of
28   the Motion for Preliminary Injunction helps demonstrate the unity and joint nature of Joli Grace, Stacie Lancaster, Love
     Grace, and Art Lancaster. The Motion for Preliminary Injunction is set to be heard on November 14, 2016.

1  Spero.  (Petersen Decl. at ¶ 21, Exs. N & O.)  Based on the appearances of the two store chains, the

2  intermingling of merchandise, the implementation of the same POS system, the conversion of Apricot

3  Lane customers and customer information, and the conversion of the Lancasters' Apricot Lane

4  boutiques to Blu Spero boutiques, it is evident that the Lancasters are operating their Apricot Lane

5  and Blu Spero boutiques as a single and intermingled joint enterprise. If there was ever any real

6  distinction between the two entities – and CVI contends there was not – any such distinction is gone.

7  Joli Grace and Love Grace are a single enterprise owned and operated by Stacie and Art Lancaster.

8  **III.    ARGUMENT**

9      **A.    This Court Has Personal Jurisdiction Over All Counter-Defendants**

10        Counter-Defendants have not contested that this Court has personal jurisdiction over Joli

11  Grace and Stacie Lancaster.  Indeed, in addition to having consented to the jurisdiction of this Court

12  by filing suit here, the Franchise Agreements include a valid forum selection clause that provides for

13  jurisdiction in this District. Art Lancaster and Love Grace are bound by the same forum selection

14  clause and subject to this Court's jurisdiction to the same extent as Stacie Lancaster and Joli Grace

15  because CVI has established a *prima facie* showing that Art Lancaster and Love Grace are alter egos

16  of Joli Grace and Stacie Lancaster.  Similarly, the Stacie Lancaster Children's Trust and Christine

17  Thornhill as Trustee of the Trust are bound by the forum selection clauses in the Franchise

18  Agreements and have failed to meet their burden in showing why application of the forum selection

19  clauses would be unfair or unreasonable.

20      **1.    Personal Jurisdiction Generally**

21        A court may "exercise personal jurisdiction over a non-resident defendant if jurisdiction is

22  proper under California's long-arm statute and if that exercise of jurisdiction accords with federal

23  constitutional due process principles." *Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*, 103

24  F.3d 888, 893 (9th Cir. 1996).  California's long arm statute authorizes the court to exercise personal

25  jurisdiction over a non-resident party on any basis not inconsistent with the California or Federal

26  Constitution.  *Id.* (citing CAL. CODE CIV. PROC. § 410.10).  The two inquiries are therefore merged.

27        Due process requires that the non-resident defendant have certain "minimum contacts" with

28  the forum state such that the maintenance of the suit does not offend "traditional notions of fair play

1    and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Minimum contacts

2    exist where the defendant's conduct in or connection with the forum state is such that the defendant

3    should reasonably anticipate being subject to suit in the state.  *WorldWide Volkswagen Corp. v.*

4    *Woodson*, 444 U.S. 286, 297 (1980).  Personal jurisdiction may be established in either of two ways:

5    through general jurisdiction or specific jurisdiction. General jurisdiction exists when the nonresident's

6    contacts with the forum are "continuous and systematic." *Bancroft & Masters, Inc. v. Augusta Nat'l*

7    *Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).  A court can exercise specific personal jurisdiction over a

8    defendant where the claim "arises out of or has a substantial connection to the defendant's contacts

9    with the forum."  *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114,

10   1123 (9th Cir. 2002).

11          When a court decides a motion to dismiss for lack of personal jurisdiction without conducting

12   an evidentiary hearing, the plaintiff need only make a *prima facie* showing that personal jurisdiction

13   exists.  *Ballard v. Savage*, 65 F.3d 1494, 1498 (9th Cir. 1995).  As such, CVI needs only make a

14   *prima facie* showing that personal jurisdiction exists over Counter-Defendants.  *Id.*  A *prima facie*

15   showing means that CVI has demonstrated facts that, if true, would be sufficient to establish the

16   existence of personal jurisdiction.  *Harris Rutsky & Co., Ins. Services, Inc. v. Bell & Clements, Ltd.*,

17   328 F.3d 1122, 1129 (9th Cir. 2003).  "In evaluating whether a prima facie showing has been made, a

18   court must take any uncontroverted allegations in the complaint as true, but it ' "may not assume the

19   truth of allegations in a pleading which are contradicted by affidavit." 'Thus, the Ninth Circuit has

20   cautioned that "[t]he plaintiff cannot "simply rest on the bare allegations of its complaint." '**If there**

21   **are factual disputes based on competing affidavits submitted by the parties, then those disputes**

22   **are resolved in the plaintiff's favor."** *Pelican Communications, Inc. v. Schneider,* No. C–14–4371

23   EMC, 2015 WL 527472 (N.D. Cal. Feb. 6, 2015)  (quoting *Mavrix Photo, Inc. v. Brand Techs., Inc.*,

24   647 F.3d 1218, 1223 (9th Cir. 2011) (emphasis added); *see also AT & T v. Compagnie Bruxelles*

25   *Lambert,* 94 F.3d 586, 588 (9th Cir. 1996) (stating that "uncontroverted allegations in [plaintiff's]

26   complaint must be taken as true, and '**conflicts between the facts contained in the parties'**

27   **affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie**

28   **case for personal jurisdiction exists**' ") (emphasis added).

**2.      Joli Grace and Stacie Lancaster are Subject to This Court's Jurisdiction**

There is no dispute that Counter-Defendants Joli Grace and Stacie Lancaster are subject to this Court's jurisdiction. In addition to consenting to this Court's jurisdiction by filing their Complaint in this District, Joli Grace and Stacie Lancaster are bound by the forum selection clauses in the Franchise Agreements, which provide for jurisdiction in this District.  *See* Franchise Agreement, § 20.C,  attached as Exhibit A to the Petersen Decl.; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) ("Where such forum-selection provisions have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' their enforcement does not offend due process.") (internal citations omitted); *Net2Phone, Inc. v. Superior Court*, 109 Cal. App. 4th 583, 588 (2003); *Lu v. Dryclean-U.S.A. of Cal., Inc.*, 11 Cal.App.4th 1490, 1492-93 (1992). Counter-Defendants' Motion to Dismiss makes no claims or arguments about the forum selection clauses in the Franchise Agreements being "unreasonable or unjust". *See generally* Counter-Defendant's Motion to Dismiss.  Thus, this Court has specific personal jurisdiction over Joli Grace and Stacie Lancaster.

**3.      Love Grace and Art Lancaster are Subject to This Court's Jurisdiction as Alter Egos of Joli Grace and Stacie Lancaster**

By way of uncontroverted allegations in the Counterclaim regarding alter ego, and the additional evidence submitted in support of its Opposition to the Motion, CVI has made a *prima facie* showing that Art Lancaster and Love Grace are alter egos of Joli Grace and Stacie Lancaster. As such Art Lancaster and Love Grace are bound by the forum selection clauses of the Franchise Agreements and subject to this Court's jurisdiction to the same extent as Stacie Lancaster and Joli Grace.[2]

---

[2]      Counter-Defendants' attempt to distinguish between the contract and tort claims for purposes of jurisdiction is misguided.  As alter egos, Love Grace and Art Lancaster are subject to this Court's jurisdiction to the same extent as Joli Grace and Stacie Lancaster.  The Franchise Agreements signed by Stacie Lancaster on behalf of Joli Grace provide that the litigation of any "Claim" shall be subject to the jurisdiction of the "state and federal courts with proper subject matter jurisdiction located in the county or judicial district in which [CVI] maintains its principal offices." Franchise Agreement § 23(C), attached as Exhibit A to Petersen Decl.  "Claim" is defined as "[a]ny and all disputes, controversies, claims, causes of action and requests for relief arising out of or in connection with or relating to [the] Agreement or any breach of [the] Agreement."  *Id.* at § 23(A).  Because the Franchise Agreements specify that the forum selection clauses apply to all claims relating to the agreement, jurisdiction is proper over both contract and tort claims.  *See Cal-State Business Products & Services, Inc. v. Ricoh*, 12 Cal. App. 4th 1666, 1677 (1993).

a.        Personal Jurisdiction and Alter Ego Liability

"Federal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court." *Transamerica Corp. v. Compana, LLC.*, No. C 05-00549MJJ, 2005 WL 2035594, at *3 (N.D. Cal. Aug. 22, 2005) (quoting *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002) (collecting cases)); *see also Certified Bldg. Products, Inc. v. N.L.R.B.*, 528 F.2d 968 (9th Cir. 1976) (per curiam). "The theory underlying these cases is that, because the two corporations (or the corporation and its individual alter ego) are the *same entity,* the jurisdictional contacts of one *are* the jurisdictional contacts of the other for the purposes of the *International Shoe* due process analysis." *Id.* (quoting *Patin*, 294 F.3d at 653) (emphasis in the original); *see also Sys. Div., Inc. v. Teknek Elecs., Ltd.*, 253 Fed.Appx. 31, 37 (Fed. Cir. 2007) ("The exercise of jurisdiction over an alter ego is compatible with due process because a corporation and its alter ego are the *same entity*—thus, the jurisdictional contacts of one are the jurisdictional contacts of the other.") (emphasis in original).

In order to establish personal jurisdiction on an alter ego theory, the plaintiff "must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate entities would result in fraud or injustice." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001); *see also AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996). In determining whether the alter ego test has been satisfied, courts consider a variety of factors, including the following:

> the commingling of funds and other assets; observation of corporate formalities and the segregation of corporate records; use of the same offices and employees; identity of directors and officers; sole ownership of all of the stock in a corporation by one individual or the members of a family; inadequate capitalization; failure to maintain arm's length relationships among the related entities; the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation; and the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in the other.

*Hall-Magner Grp. v. Firsten*, No. 11-CV-312 JLS POR, 2011 WL 5036027, at *3 (S.D. Cal. Oct. 24,

2011) (citing *Associated Vendors, Inc. v. Oakland Meat Co., Inc.*, 210 Cal. App. 2d 825 (1962)).  No single factor is determinative; the court must consider all the facts and circumstances.  *Id.* (citing *Virtualmagic Asia, Inc. v. Fil–Cartoons, Inc.*, 99 Cal. App. 4th 228 (2002)).

The threshold for exercising personal jurisdiction on the basis of alter ego is lower than the threshold for piFercing the corporate veil for liability purposes.  *Hitachi Med. Sys. Am., Inc. v. Branch*, 2010 WL 816344 (N.D. Ohio Mar. 4, 2010) (citing *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981) ("[T]he district court erred in applying the strict test used by New York in determining whether or not to pierce the corporate veil for purposes of liability.  In deciding the limited question of whether it had jurisdiction the court should have looked only to the question whether [Defendant Corporation] was a shell for [Individual Defendant]; it should not have required a showing that the shell was used to commit a fraud.")).

When determining whether a *prima facia* case for alter ego has been made for purposes of jurisdiction, "uncontroverted allegations in [plaintiff's] complaint must be taken as true, and '**conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists**' "*AT & T v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 588 (9th Cir. 1996); *Pelican Commnc'ns, Inc. v. Schneider*, No. C-14-4371 EMC, 2015 WL 527472, at *2 (N.D. Cal. Feb. 6, 2015).  Where a plaintiff has produced evidence supporting alter ego liability, factual disputes must be resolved in favor of the party asserting jurisdiction.  *See Pelican*, 2015 WL 527472, at *2 (finding that a plaintiff had failed to establish a *prima facie* case of alter ego liability for the purposes of establishing personal jurisdiction because plaintiff failed to present any evidence of its own; "[h]ad [plaintiff] simply provided its own affidavit or declaration disputing [defendant's] affidavit, then the Court would be presented with a factual dispute which it would have to resolve (at this stage in the proceedings) in [plaintiff's] favor"); *Marine Midland Bank*, 664 F.2d at 904 ("[T]he plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials. . . . [U]ntil [an evidentiary] hearing is held, a prima facie showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion.").

Significantly, in this case the Court must look to the allegations of the Counterclaim which

1   support alter ego, and unless those claims are contradicted by Counter-Defendant's affidavits, the

2   statements must be taken as true. Where Counter-Defendants have produced evidence in opposition to

3   the alter ego claims, CVI may produce (and has produced) evidence to the contrary and any such

4   evidence submitted by CVI <u>must be resolved in its favor</u>. In short, all of Counterclaimants'

5   uncontradicted claims in its Counterclaim, and all of its evidence submitted through declarations with

6   this Motion, must be weighed in CVI's favor.

7          In *Flynt Distributing Co., Inc. v. Harvey*, 734 F.2d 1389 (9th Cir. 1984), the Ninth Circuit

8   found that the district court had properly exercised personal jurisdiction over thirteen defendants on

9   an alter ego theory based on affidavits submitted by the plaintiffs.  *See* 734 F.2d at 1393-94.  The

10  court first found that five defendant corporations were signatories to a distribution agreement with a

11  California corporation, which was sufficient to confer personal jurisdiction over those defendants.  *Id.*

12  at 1392-93.  The court then found that plaintiffs had made a prima facie showing that the five

13  signatory corporations were alter egos of their sole shareholders, who in turn were alter egos of the

14  remaining non-signatory defendants.  *Id.* at 1393-94.  Plaintiffs' evidence of the alter ego relationship

15  consisted of affidavits claiming that the sole shareholders "converted the assets of the various

16  corporations and partnerships for their own use and dealt with them as if they were one," and

17  "transferred valuable assets from the five signatory corporations to the other nonsignatories" which

18  "left the five signatories undercapitalized."  *Id.*  The court found that "such conduct constitutes a

19  prima facie showing that it would be unjust to shield the [individual defendants] behind the corporate

20  veil," thereby conferring personal jurisdiction over the remaining defendants.  *Id.* at 1394.

21         Similarly, in *Vance's Foods, Inc. v. Special Diets Europe Ltd.*, No. 2:11-cv-02943-MCE-

22  GGH, 2012 WL 1353898 (E.D. Cal. Apr. 16, 2012), this Court exercised personal jurisdiction over a

23  nonresident individual defendant on an alter ego theory.  *See* 2012 WL 1353898, at *9-11.  The

24  individual defendant and his wife (Mr. and Mrs. Cotter) were the sole owners and directors of SDE,

25  an Irish corporation.  *Id.* at *1. After finding that SDE had sufficient minimum contacts with

26  California to warrant exercising jurisdiction, the Court found that plaintiff presented a *prima facie*

27  case that Mr. Cotter was an alter ego of SDE.  *Id.* at *9-11.  Plaintiff presented evidence in the form of

28  a declaration and attached exhibits that Mr. Cotter was the founding owner and president of SDE,

"appear[ed] to enjoy significant, if not complete control" over decisions made on behalf of SDE, was the only person involved in negotiations with the plaintiff on behalf of SDE, and was "personally interested" in the negotiations with the plaintiff. *See id.* at *11.  By contrast, the court declined to find that Mrs. Cotter was an alter ego because there was no evidence presented that she actively engaged in the business relationship with the plaintiff or personally participated in the alleged wrongful acts. *See id.* at *12.

                        b.    <u>The Evidence Here Is Sufficient for a *Prima Facie* Showing That Art Lancaster and Love Grace are Alter Egos of Stacie Lancaster and Love Grace.</u>

Through un-contradicted allegations in its Counterclaim and declarations of Kenneth Petersen, Melinda Liming, Sarah Martin, and Tayler Morgan, CVI has presented evidence sufficient to make a *prima facie* showing of alter ego liability for the purpose of establishing personal jurisdiction.  Among other things, the uncontradicted evidence shows that: Art and Stacie Lancaster have both represented and held themselves out as being agents of and intimately involved with both Joli Grace and Love Grace (Petersen Decl. at ¶¶ 5-7, 12-13; Counterclaim ¶¶ 1-7, 25-26, 39-40); Love Grace shares a common office with Joli Grace, and has common employees (Petersen Decl. at ¶¶ 17, 18; Counterclaim ¶¶ 45, 28); Joli Grace's Apricot Lane boutiques and Love Grace's Blu Spero boutiques carry merchandise that is tagged with the other's tag (Liming Decl. at ¶ 6, Exs. 2-4; Petersen Decl. at ¶ 21, Exs. N & O; Counterclaim ¶ 41); Joli Grace's Apricot Lane boutiques and the Love Grace's Blu Spero boutiques use the same POS system  (Liming Decl. at ¶¶ 7-8, Ex. 5; Petersen Decl. at ¶ 23, Ex. Q; Morgan Decl. at ¶¶ 3-5; Martin Decl. at ¶ 6, Ex. C); The receipts for the purchase of merchandise from Joli Grace's Apricot Lane store in Lafayette, Louisiana say "Follow us on Social Media @ Blu Spero" (Petersen Decl. at ¶ 22, Ex. P); The Lancasters have begun converting the Joli Grace Apricot Lane boutiques to Blu Spero boutiques. (Petersen Decl. at ¶ 19-21; Counterclaim ¶ 20.g);  Employees at the Hattiesburg store tell customers that "the name changed, but everything else is the same" and that the clothing brands, jewelry, and other items are the same as

1    they have always been (Martin Decl. at ¶ 4).[3]

2              c.       Counter-Defendants' Evidence is Limited, Conclusory and
                        Contradicted by CVI's Evidence.
3

4              Counter-Defendants present evidence in support of their motion through the declarations of

5    Stacie and Art Lancaster. However, the declarations are largely conclusory, lack foundation,

6    improperly state legal conclusions, and are contradicted by CVI's evidence. CVI's evidence is to be

7    given greater weight. *AT & T*, 94 F.3d at 588; *Pelican*, 2015 WL 527472, at *2 *Marine Midland*

8    *Bank*, 664 F.2d at 904.

9              The Declaration of Stacie Lancaster makes conclusory statements such as: "there is no

10   overlap in directors or officers of the two companies"; "there is no commingling of assets"; "Joli

11   Grace was not attempting to pull money out of their Apricot Lane business and put it into their Blu

12   Spero business". Declaration of Stacie Lancaster, ¶¶ 4-5. These statements are contradicted by CVI's

13   evidence. Moreover, the Declaration of Stacie Lancaster admits that Art sometimes performs tasks for

14   Joli Grace (¶ 2); that he makes purchases for Joli Grace (sometimes to the tune of $93,000) (¶ 6); and

15   that Joli Grace has allegedly made a significant "loan" to a third party, though the Declaration

16   suspiciously omits to whom the third party "loan" was made and does not deny that the "loan" was to

17   Love Grace or Art Lancaster.

18             In Art Lancaster's Declaration, he makes similar conclusory statements about the separation

19   of the entities, that Joli Grace and Love Grace don't comingle funds, and that they don't share officers

20   or assets. (Declaration of Arthur Lancaster, ¶¶ 3,4, & 7.) However, these statements are contradicted

21   by CVI's evidence. Moreover, Art Lancaster admits by way of his Declaration that Stacie Lancaster

22   "sometimes appears on promotional materials for Blu Spero and has a telephone extension at the

23   Love Grace office" (¶ 3); that Joli Grace and Love Grace share "administrative personnel" (¶ 7); and

24   that "the two companies share a corporate address" (¶7).

25             As detailed above, CVI has provided sufficient evidence showing that there is a unity of

26

27   _____

     [3]        To avoid significant repetition, we omitted re-alleging all the facts in support of alter ego between Stacie
28   Lancaster, Art Lancaster, Joli Grace, and Love Grace at this juncture. However, for a more detailed listing of all the
     facts in support alter ego, *see* section II above.

1  interest and ownership such that the separate personalities of Love Grace, Joli Grace, and Art and

2  Stacie Lancaster no longer exist.  Both Art and Stacie Lancaster exercise control over the operation of

3  both entities. The emails between Art Lancaster and Ken Petersen demonstrate that Art has been

4  intimately involved with the finances and financial decisions of Joli Grace.  Indeed, Art's emails—

5  and use of the term "we" to refer to Joli Grace when discussing Joli Grace's financial obligations—

6  demonstrate control of, and personal involvement in, Joli Grace's day-to-day operations that is akin to

7  the "significant, if not complete control" that this Court found to create an alter ego relationship in

8  *Vance's Foods*.  *See* 2012 WL 1353898, at \*11-12.  In addition, Stacie has been involved in Love

9  Grace and the Blu Spero enterprises from the beginning, even holding herself out as a "founder" of

10  Blu Spero and having a telephone line at Love Grace.  Both Art and Stacie Lancaster are personally

11  engaged and personally interested in the operations of each entity.  Neither Art nor Stacie can be said

12  to be akin to Mrs. Cotter in *Vance's Foods*, who was found not to be an alter ego because there was

13  no evidence of any personal engagement or involvement with her husband's corporation.  *See id*.

14          Further, the facts indicate a total failure to maintain arm's length relationships between the

15  related entities.  Love Grace and Joli Grace share an address and employees.  There is evidence of

16  commingling of funds between the various entities and individuals.  Joli Grace's financial sheets

17  show a $93,835 debt owed to Art Lancaster, as well as $51,676 due to "related parties."  Art

18  Lancaster and Joli Grace own property together in the form of a car.  As in *Flynt Distributing Co.*,

19  this evidence suggests that the Lancasters have "converted the assets of the various corporations and

20  partnerships for their own use and dealt with them as if they were one."  *See Flynt Distributing Co.*,

21  734 F.2d at 1393-94.

22          In addition, the Lancasters' Apricot Lane and Blu Spero boutiques are unquestionably jointly

23  managed and operated.  The stores have been designed to use identical signage and displays, carry the

24  same merchandise, and use the same POS system.  The Lancasters use their Apricot Lane boutiques

25  to sell Blu Spero merchandise and vice versa.  Employees tell customers that Blu Spero and Apricot

26  Lane are "sister stores."  In the case of the Hattiesburg store location, the employees are telling the

27  customer that although "the name has changed, the store is still the same." Indeed, and most tellingly,

28  the Lancasters have begun a campaign of converting their Apricot Lane boutiques into Blu Spero

boutiques <u>while the franchise agreements are still in place</u>. In the case of the Hattiesburg boutique, Joli Grace has refused to turn over the store location and lease as it is required to do, and has instead begun operating the store as a Blu Spero, while still selling Apricot Lane tagged items. This unabashed changeover of Apricot Lane boutiques to Blu Spero boutiques demonstrates that the Lancasters have effectively dropped all pretenses that Joli Grace and Love Grace are separate entities. It is clear from this evidence that the Lancasters and Joli Grace are using Love Grace as a "mere shell . . . for a single venture" in order to evade the non-compete obligations of their Franchise Agreements by opening and operating a competing business, in many cases, in the same space that was previously one of their Apricot Lane boutiques. *See Hall-Magner Grp.*, 2011 WL 5036027, at *3.

             d. <u>Failure to Find that Art Lancaster and Love Grace are the Alter Egos of Joli Grace and Stacie Lancaster Would Result in Fraud and Injustice.</u>

The facts of this case clearly evidence that a failure to find that Art Lancaster and Love Grace are the alter egos of Joli Grace and Stacie Lancaster in this situation would result in fraud, injustice, and the litigation of the overlapping claims in two different jurisdictions. First, there is ample evidence that the Lancasters created Love Grace for the sole purpose of attempting to evade the non-compete clauses in the Apricot Lane Franchise Agreements and that they have subsequently opened Blu Spero boutiques which imitate the Apricot Lane boutiques. This sham attempt to avoid the non-competes is belied by the unity of interests, actions, management, employees, products, and even operating systems used by the boutiques.

Second, failing to find that Love Grace and Art Lancaster are alter egos of Joli Grace and Stacie Lancaster would allow Art Lancaster and Love Grace to avoid jurisdiction in this Court and would force CVI to unnecessarily litigate the same issue in two separate actions—both actions involving the same facts, witnesses, and evidence. This would cause a significant waste of time, money, and resources by the parties, the witnesses, and the courts.

        **4.**     **This Court Has Jurisdiction Over The Stacie Lancaster Children's Trust and Christine Thornhill as Trustee of the Trust Because They Are Subject to the Forum Selection Clauses in the Franchise Agreements**

California and federal courts presume the validity of forum-selection clauses. CAL. PRAC. GUIDE CIV. PRO. BEFORE TRIAL Ch. 3-B; *see also Net2Phone, Inc. v. Superior Court*, 109 Cal. App. 4th 583, 588 (2003); *Lu v. Dryclean-U.S.A. of California, Inc.*, 11 Cal. App. 4th 1490, 1492-93 (1992).   A party seeking to defeat such a clause bears the burden of proving that its enforcement would be *unfair* or *unreasonable* under the circumstances of the case.   *Id.*

Counter-Defendants contend that The Stacie Lancaster Children's Trust ("Trust") and Christine Thornhill as Trustee of Trust ("Trustee") are not subject to personal jurisdiction in this Court.   This is nonsense.   A trustee is bound by the forum selection clauses of the property which it administers.   *In re Bennett Funding Group, Inc.*, 259 B.R. 243, 252 (2001) (where promissory notes underlying the claims at issue contain mandatory forum selection clauses, bankruptcy trustee was subject to those forum selection clauses).   Moreover, according to Stacie Lancaster, all interest in Joli Grace was transferred from Stacie Lancaster to the Trust subsequent to Joli Grace entering into the Franchise Agreements containing the forum selection clauses.   (As CVI alleges in the Courterclaim, any such transfer without CVI's approval, would be a violation of the Franchise Agreements.)   If, as Counter-Defendants contend, there was a transfer of the interests in Joli Grace from Stacie Lancaster to the Trust, then the Trustee and Trust are bound by the requirements of the Franchise Agreements.   Thus, by allegedly transferring the interest in Joli Grace from Stacie Lancaster to the Trust, the Trustee and Trust became bound by the forum selections clauses in the Franchise Agreements.

Moreover, even if the Trust was not bound by the forum selection clause by virtue of it allegedly obtaining all interest in Joli Grace, a forum-selection clause may be enforced against nonsignatories who are "closely related" to the contractual relationship involved.   *Dryclean-U.S.A. of California, Inc.*, 11 Cal.App.4th at 1492-93; *Net2Phone, Inc.*, 109 Cal.App.4th at 588.   Here, the Trust has allegedly become the owner of Joli Grace and therefore controls the entity.   However, to determine whether the transfer was actually valid, the Court will need to look to the terms and conditions of the Franchise Agreement and whether the transfer to the Trust adhered to those requirements.   The Trust and its Trustee, as parties to the transaction directly at issue in this case (the validity of which will be determined based on the terms of the Franchise Agreements), are "closely related" to the contractual relationship involved and therefore subject to the forum selection clause.

Lastly, it is the burden of the party contesting the forum selection clause to show that enforcement is unfair or unreasonable. CAL. PRAC. GUIDE CIV. PRO. BEFORE TRIAL Ch. 3-B; *see also Dryclean-U.S.A. of California, Inc.*, 11 Cal.App.4th at 1492-93 (requiring third party to set forth argument as to why forum selection clause is inapplicable); *Net2Phone, Inc.*, 109 Cal.App.4th at 588 (same). Here, the only argument set forth in the brief as to lack of jurisdiction is that the Trust is a Louisiana Entity and the Trustee is a Louisiana resident. Neither the Trust nor Trustee argues that it would be unfair or unreasonable to require them to litigate the matter in California. If, by asserting that they reside in Louisiana, they are attempting to argue that it would be inconvenient for them to litigate in California, "[t]his argument has been flatly rejected by the California Supreme Court, which has held '[m]ere inconvenience or additional expense is not the test of unreasonableness....'" *Dryclean-U.S.A. of California, Inc.*, 11 Cal.App.4th at 1493 (quoting *Smith, Valentino & Smith, Inc. v. Superior Court*, 17 Cal.3d 491, 496 (1976)). Moreover, the only "evidence" presented by Counter-Defendants as to why there is no jurisdiction over the Trust and Trustee is a declaration from Stacie Lancaster stating that the Trust and Trustee have not had contacts with the forum state. These statements are hearsay and lack foundation as they are not made by the parties whose contacts are at issue. Without the unfounded statements of Stacie Lancaster about the contacts of the Trust and Trustee to the forum jurisdiction, Counter-Defendants have provided no evidence on which to find that jurisdiction does not exist.

In sum, the forum selection clause must be applied because by virtue of any alleged transfer of ownership interest in Joli Grace from Stacie Lancaster to the Trust, the Trust is bound by the forum selection clause in the franchise agreements. Moreover, the Trust and Trustee are closely related to the contractual relationship involved, and they have failed to present any evidence or to meet their burden of showing why it would be unfair or unreasonable to subject them to the forum selection clause in this case.

**B.**   **CVI Has Alleged Sufficient Facts to State its Claims and With Sufficient Particularity to Meet the Applicable Pleading Standards; Thus, the Court Should Deny Counter-Defendants' 12(b)(6) Motion in its Entirety.**

Federal Rule of Civil Procedure §12(b)(6) provides that a motion to dismiss may be made if the plaintiff fails "to state a claim upon which relief can be granted."  A claim must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Aschroft v. Iqbal*. 556 U.S. 662, 678 (2009).  On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the non-movant.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).

**1.**   **CVI Makes a *Prima Facie* Showing that Joli Grace, Stacie Lancaster, Love Grace, and Art Lancaster are Alter Egos; Thus, Counter-Defendants' Arguments at Sections C and D Must Also Be Denied.**

Counter-Defendants' requests for dismissal of Claims I, III, IV, VI, VII, XII, and XIII, are premised on the conclusion that Art Lancaster and Love Grace are not alter egos of Stacie Lancaster and Joli Grace. Counter-Defendants do not otherwise contest the sufficiency of the claims.  However, CVI has made a *prima facie* showing of alter-ego amongst all the entities.  As such, these arguments fail for the same reasons articulated above as to why this Court has personal jurisdiction over Art Lancaster and Love Grace.

In order to state an alter ego claim, CVI must plead facts evidencing (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate entities would cause an inequitable result.  *Firstmark Capital Corp. v. Hempel Fin. Corp.*, 859. F.2d 92, 94 (9th Cir. 1988); *Leek v. Cooper*, 194 Cal. App. 4th 399, 415 (2011).  As discussed above, CVI alleged ample facts which establish (not just as a matter of pleading but as a matter of fact) that Art Lancaster and Love Grace are alter egos of Stacie Lancaster and Love Grace.

CVI has pled facts, not mere conclusions, demonstrating a unity of interest and ownership such that the separate personalities of Love Grace, Joli Grace, and Art and Stacie Lancaster no longer exist.  As alleged in the Counterclaim, both Art and Stacie Lancaster exercise control over the

1    operation of both entities. Indeed, Art has had intimate and continuous involvement with the finances

2    and financial decisions of Joli Grace from the beginning, and Stacie Lancaster has taken an active role

3    in running Love Grace, including holding herself out as a "founder" of Blu Spero and having a

4    telephone extension at Love Grace. Joli Grace and Love Grace share an address as well as officers,

5    directors, and employees.  Evidence shows that there has been a commingling of funds between the

6    various entities and individuals and that the Lancasters have taken out loans ostensibly in connection

7    with their Apricot Lane business which were likely used to expand their Blu Spero business.   The

8    Lancasters have designed their Blu Spero stores to appear similar to Apricot Lane stores by using the

9    same design, fixtures, displays, and signage and by carrying the same merchandise.  As alleged in the

10   Counterclaim, employees at Blu Spero boutiques tell customers that Blu Spero and Apricot Lane are

11   "sister stores."  The Lancasters sell Blu Spero clothing at their Apricot Lane stores.  The Lancasters

12   have begun a campaign to convert Apricot Lane boutiques (including some that are still in franchise

13   agreements with CVI) into Blu Spero stores, a fact which shows that there is no longer even a

14   pretense of the entities having separate personalities.

15          Similarly, CVI has adequately alleged that failing to find Art Lancaster and Love Grace are

16   the alter egos of Joli Grace and Stacie Lancaster would result in fraud and injustice by allowing the

17   Lancasters to evade the non-compete clauses in the Apricot Lane Franchise Agreements, convert

18   CVI's goodwill and customers, and defraud the public by setting up a sham corporation.[4]  *Id*. at ¶¶ 41,

19   99, 118.

20          If the Court finds that CVI has alleged sufficient facts that Art Lancaster and Love Grace are

21   subject to this Court's jurisdiction on an alter ego theory, then it necessarily follows that CVI has

22

23   _____

24   [4]       Counter-Defendants are incorrect in suggesting that the only type of "inequitable result" that warrants a finding of
     alter ego liability is the abuse of the corporate form so as to defeat collection of a judgment.  The case that Counter-
     Defendants cite for this proposition, *Firstmark Capital Corp. v. Hempel Financial Corp.*, does not stand for this

25   proposition and merely notes that "the 'kind of inequitable result' that makes alter ego liability appropriate is an abuse of
     the corporate form, *such as* under-capitalization or misrepresentation of the corporate form to creditors."  859. F.2d at 94.

26   (emphasis added).  Noticeably, Counter-Defendants have cited to this portion of the case, but have inserted into this quote
     the language (which does not appear in the case) suggesting the "inequitable result" inquiry is limited to use of the

27   corporate form to defeat collection of a judgment. The *Firstmark* court did not impose any such limitation on the meaning
     of "inequitable result" and declined to pierce the corporate veil on the wholly unrelated ground that the defendant was

28   merely a passive beneficiary of the disregarding of the corporate form, rather than an active participant in the subject
     activity.  *See id*. at 94-95.

satisfied the pleading requirements for its alter ego claims for the purposes of defeating Counter-Defendants' 12(b)(6) motion.

### 2.      The Economic Loss Rule Does Not Bar CVI's Fraud Claim.

"The economic loss rule poses no barrier to a properly pled fraudulent inducement claim: '[I]t has long been the rule that where a contract is secured by fraudulent representations, the injured party may elect to affirm the contract and sue for fraud.'"  *United Guar. Mortg. Indem. Co. v. Countrywide Financial Corp.*, 660 F. Supp. 2d 1163, 1188 (C.D. Cal. 2009) (quoting *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 645 (1996)).   Moreover, in a complaint, "[a] party may plead alternative theories of liability, even if those theories are inconsistent or independently sufficient." *Cellars v. Pacific Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Cal. 1999) (citing FED. R. CIV. PROC. 8(e)(2)).

The economic loss doctrine applies in "strict liability and negligence cases," as opposed to tort cases generally.   *Aas v. Superior Court*, 24 Cal. 4th 627, 643 (2000) (overruled on other grounds).   The doctrine does not apply in cases of fraud, because "parties cannot, and should not, be expected to anticipate fraud and dishonesty in every transaction."   *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 993 (2004).   Where, as here, fraud is alleged to have induced the victim to enter into the contract in the first place, the economic loss rule is no bar to the action. *United Guar. Mortg. Indem. Co.*, 660 F. Supp. 2d at 1188 (citing *Lazar*, 12 Cal. 4th at 645); *Pedersen v. Greenpoint Mortg. Funding, Inc.*, No. 2:11-CV-00642-KJM, 2013 WL 3992245, at *5 (2011)  (E.D. Cal., Aug. 2, 2013).   "In short, the 'economic loss rule is designed to limit liability in commercial activities that negligently or inadvertently go awry, not to reward malefactors who affirmatively misrepresent and put people at risk.'"   *NuCal Foods, Inc. v. Quality Egg LLC*, 918 F. Supp. 2d 1023, 1033 (E.D. Cal. 2013) (quoting *Robinson*, 34 Cal. 4th at 991 n.7).

Moreover, the fraud alleged in the Counterclaim is not merely a breach of the contractual terms of the Franchise Agreements; it is a fraudulent scheme to *undermine* the requirements of the Franchise Agreements.   Joli Grace and Stacie Lancaster fraudulently induced CVI to enter into the Franchise Agreements by concealing from CVI that they had already hatched a scheme to open a competing line of clothing boutiques which would be hidden behind the sham corporate facade of

Love Grace.  Stacie Lancaster and Joli Grace also concealed that they would take what they learned from the Apricot Lane franchise and share it with Love Grace and Art Lancaster to achieve their common goal of furthering a competing enterprise.  Their intentional fraudulent actions do more than simply violate the prohibition against competition covered by the Franchise Agreements; Joli Grace and Stacie Lancaster intended, at the time the Franchise Agreements were entered into, to subvert the non-complete terms of the Franchise Agreements.  CVI would not have entered into the Franchise Agreements if it had known that Joli Grace and Stacie Lancaster intended to subvert the terms of the Franchise Agreements.  This fraud is separate and apart from a breach of the Franchise Agreements themselves and is properly alleged as a distinct cause of action.

> **3.    CVI Has Alleged Facts with Sufficient Particularity with Regard to Its Lanham Act and Unfair Competition Claims; Thus, Counter-Defendants' Arguments at Sections F and G Must Be Denied.**
>
> > a.    <u>CVI Has Alleged Sufficient Facts, and With Sufficient Particularity, In Support of Claim VII (Lanham Act Claim).</u>

Claim VII alleges violations of the Lanham Act against Joli Grace, Stacie Lancaster, Art Lancaster, and Love Grace for the unlawful use of the Apricot Lane mark in connection with the Lancasters' Blu Spero stores.  Contrary to Counter-Defendants' arguments in Section F of the Motion, CVI has pled sufficient facts, rather than mere legal conclusions, to state a claim under the Lanham Act.  Further, these allegations are pled with the requisite particularity to meet Rule 9(b)'s heightened pleading standards.

To prevail on its trademark infringement claim, CVI must show that (1) it has a valid, protectable trademark, and (2) that the defendant's use of the mark is likely to cause confusion. *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007); *Century. 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, (9th Cir. 1988).

Here, CVI has a federally registered trademark in "Apricot Lane."  CVI has pled facts—not merely conclusions—showing that Counter-Defendants' use of the mark is likely to cause confusion as to the origin of Apricot Lane and Blu Spero goods and the relationship between Apricot Lane boutiques and Blu Spero boutiques.  In addition, in connection with its opposition to Counter-

Defendants' 12(b)(3) motion, CVI has provided sworn declarations attesting to the fact that Counter-Defendants' have wrongfully converted several of their Apricot Lane stores into Blu Spero stores, while telling customers that "everything else is the same;"  that they continue to sell clothing in the Spanish Fort and Mandeville boutiques (which they have unlawfully converted to a Blu Spero boutiques) tagged with the "Apricot Lane" mark; that  Blu Spero employees have described Blu Spero as a "sister store" of Apricot Lane; and that employees at the Spanish Fort boutique are telling customers that although "the name has changed, the store is still the same." CVI can amend if necessary to allege these recently discovered facts.

The likelihood of confusion is increased by the fact that the Lancasters' Blu Spero stores have been designed to appear identical to Apricot Lane boutiques, utilizing the same construction, styles, sale signage, and displays as well as carrying the same brands and merchandise.  CVI has therefore adequately pled a Lanham Act claim based upon Counter-Defendants' improper use of the Apricot Lane mark in a manner that is likely to cause confusion to the public.

Counter-Defendants' argument that Claim VII fails because CVI did not meet Rule 9(b)'s heightened pleading standards is similarly incorrect.  Rule 9(b)'s particularity requirement applies to fraud claims or, where fraud is not a necessary element of a claim, where plaintiff alleges that the defendant has engaged in fraudulent conduct.  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).  Where a plaintiff has alleged some fraudulent and some non-fraudulent conduct, only the allegations of fraud are subject to the heightened pleading requirement.  *See id.* Assuming, though not conceding, that Rule 9(b) applies to CVI's Lanham Act claims,[5] CVI has alleged with sufficient particularity facts which meet the heightened pleading standard.  Here, CVI's

---

[5]      In support of their argument that Rule 9(b)'s heightened pleading standard is applicable to CVI's Lanham Act claim, Counter-Defendants cite exclusively to cases addressing "misrepresentation" claims under the Lanham Act—which require a showing of a false representation and are therefore grounded in fraud—and holding that such claims are subject to the heightened standard.  *See TransFresh Corp. v. Ganzerla & Assoc., Inc.*, 862 F. Supp. 2d, 1009, 1018 (N.D. Cal. 2012); *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1084-85 (C.D. Cal. 2010); *Brosnan v. Tradeline Solutions, Inc.*, No. C-08-0694 JCS, 2009 WL 1604572, at *5 (N.D. Cal. June 5, 2009).  This is not the case here, where CVI's Lanham Act claims are based on Counter-Defendants' unauthorized use of the Apricot Lane mark.  Indeed, the *EcoDisc Tech.AG* court noted that "[a]lthough the Ninth Circuit has not concluded that Rule 9(b) applies to Lanham Act claims, many district courts have applied this heightened pleading standard to claims that are grounded in fraud, such as misrepresentation claims."  711 F. Supp. 2d at 1085.  Counter-Defendants have provided no authority that Rule 9(b) applies, categorically, to CVI's claims.

Lanham Act claim is based on Counter-Defendants' unauthorized use of the Apricot Lane mark in a manner that is likely to cause confusion to the general public.  The facts alleged by CVI—as detailed above—are more than mere conclusory allegations; rather, they provide the "'who, what, when, where, and how' of the alleged misconduct" in a manner specific enough to give Counter-Defendants sufficient "notice of the particular misconduct so that they can defend against the charge."  *See Brosnan v. Tradeline Solutions, Inc*., No. C-08-0694 JCS, 2009 WL 1604572, at *5 (N.D. Cal. June 5, 2009).

This is particularly evident in comparison with the facts in *Brosnan v. Tradeline*, one of the cases cited by Counter-Defendants applying Rule 9(b) to a Lanham Act claim.  In *Brosnan*, the plaintiff brought a false advertising claim—a claim which requires a false or misleading statement of fact.  However, the plaintiff failed to allege particular facts supporting his claim and merely "recite[d] the test for . . . false advertising under the Lanham Act" without alleging who engaged in the fraudulent acts, when and to whom the fraudulent statements were made, and how the statements were fraudulent.  *See id*. at *4-6.  This is far different from this case, where fraud is not a requirement of CVI's claim, yet CVI has nonetheless alleged with particularity precisely how Stacie Lancaster, Art Lancaster, Love Grace, and Joli Grace have misappropriated and misused the Apricot Lane mark in a manner that is likely to confuse the public.  This evidence—laid out in the Counterclaim and demonstrated with sworn declarations—amounts to more than mere cursory allegations or bare legal conclusions and is sufficient to meet even Rule 9(b)'s heightened pleading standards. If the Court thinks otherwise, CVI should be given the opportunity to amend its claims to add additional newly discovered facts.

                    b.      **CVI's California and Louisiana Unfair Competition Law Claims are Pleaded With Sufficient Particularity to Meet the Heightened Pleading Standards**

Counter-Defendants' arguments that CVI's Unfair Competition Law ("UCL") claims fail for the same reasons described above: CVI has pled these claims with sufficient particularity.  The California UCL prohibits and provides remedies for unfair competition, which it defines as "any unlawful, unfair or fraudulent business act or practice."  *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310,

320 (2011)   (quoting Cal. Bus & Prof. Code § 17200).   "Because the statute is written in the disjunctive, it is violated where a defendant's act or practice is (1) unlawful, (2) unfair, (3) fraudulent, or (4) in violation of section 17500."   *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).   CVI has pled with sufficient particularity to meet Rule 9(b)'s heightened pleading standard with respect to both the "unlawful" and "fraudulent" prongs of the UCL.

The "unlawful" prong of the California UCL "borrows violations of other laws and treats them as independently actionable."   *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999).   "Violation of almost any federal, state, or local law may serve as the basis for a UCL claim."   *Plascencia v. Lending 1st Mortg.*, 583 F. Supp. 2d 1090, 1098 (N.D. Cal. 2008).   Thus, if the Court finds that CVI has adequately alleged a Lanham Act claim, then it has similarly adequately alleged its UCL claim.   *See id.; Obesity Research Institute, LLC v. Fiber Research International, LLC*, 165 F. Supp. 3d 937, 952-53 (S.D. Cal. 2016) (finding plaintiff met the Rule 9(b) pleading standard for the "unlawful" prong because the complaint "lays out in great detail how [the Lanham Act] [was] allegedly violated" and the court had "already found the allegations [were] sufficient to constitute a violation of the Lanham Act").

To state a claim under the UCL's "fraudulent prong," CVI must plead that Counter-Defendant's allegedly fraudulent business practice is one in which "members of the public are likely to be deceived," as judged by its effect on a "reasonable consumer."   *Obesity Research Institute*, 165 F. Supp, 3d at 952.   Here, CVI has pleaded with great particularity exactly how Counter-Defendants have intentionally deceived the public by selling Apricot Lane clothing in their Blu Spero stores, converting Apricot Lane stores into Blu Spero stores, telling the public that Apricot Lane and Blu Spero are "sister stores," that "although the name has changed, the store is still the same" and designing their Blu Spero stores so as to appear identical to Apricot Lane stores.   As such, CVI has met the heightened pleading requirement to allege "fraudulent" conduct under the UCL.   *See Obesity Research Institute*, 165 F. Supp. 3d at 952 ("The [counterclaim] goes into great detail as to who, what, and when the fraudulent conduct was allegedly committed, even attaching copies of the allegedly fraudulent marketing materials.  [Counter-Defendant's] argument on this ground must fail.").

1    CVI has similarly alleged facts with sufficient particularity to meet the heightened pleading

2  standard with respect to its Louisiana Unfair Trade Practices Act ("LUTPA") claim.  LUTPA "makes

3  illegal all unfair or deceptive acts or practices in the conduct of any trade or commerce."  *Amer.*

4  *Machinery Movers, Inc. v. Machinery Movers of New Orleans, LLC*, 136 F. Supp. 2d 599, 604 (E.D.

5  La. 2001).  "A practice is unfair when it offends established public policy and which is unethical,

6  oppressive, unscrupulous, or substantially injurious."  *Jefferson v. Chevron U.S.A. Inc.*, 713 So. 2d

7  785, 792 (La. Ct. App. 1998).  "A trade practice is 'deceptive' for purposes of LUTPA when it

8  amounts to fraud, deceit or misrepresentation." *Id*. For the reasons described above, CVI's allegations

9  supporting its Lanham Act claims are likewise sufficient to support its LUTPA claim.  *See, e.g.*, *721*

10  *Bourbon, Inc. v. B.E.A., Inc.*, No. 11-710, 2011 WL 3747231, at *7-8 (E.D. La. Aug. 25, 2011)

11  (finding that plaintiff had adequately stated a claim for unfair trade practices for the purposes of a

12  12(b)(6) motion because plaintiff had also adequately stated a Lanham Act claim); *Hamdan v. Tiger*

13  *Brothers Food Mart, Inc.*, No. 15-00412-BAJ-EWD, 2016 WL 1192679, at *4 (M.D. La March 22,

14  2016) (noting on a motion for default judgment that "[u]nder Fifth Circuit law, a likelihood of

15  confusion supports both a claim under the Lanham Act and under the LUPTA. As the Court has

16  found Plaintiff's allegations of a likelihood of confusion are supported by the factual allegations of

17  the Complaint, these facts would also support a finding of a violation of the LUTPA").

18      **4.    CVI Has Alleged Sufficient Facts In Support of Its Tortious Interference
             With Contract Claim**

19

20    Tortious interference with contract requires allegations of the following elements: "(1) a valid

21  contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3)

22  defendant's intentional acts designed to induce a breach or disruption of the contractual relationship;

23  (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."  *CRST Van*

24  *Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1105 (9th Cir. 2007).

25    CVI's Counterclaim alleges facts in support of each element of this cause of action.  As

26  alleged in the Counterclaim, there exist valid Franchise Agreements between CVI and Joli Grace.

27  Counterclaim ¶¶ 19-20. The Franchise Agreements are specifically identified in the Counterclaim at

28  paragraphs 20-21, and copies of the Franchise Agreements are incorporated into the Counterclaim as

Exhibits A-J. *Id.* ¶¶20-21, Exs. A-J.  Art Lancaster and Love Grace knew of these Franchise Agreements because Art was integral to their negotiation.  *Id.* ¶¶ 18, 25.  Despite being aware of the franchise agreements between CVI and Joli Grace, Love Grace and Art Lancaster induced Joli Grace and Stacie Lancaster to breach the Franchise Agreements and Personal Guarantees with CVI by, among other things, failing to pay Royalties, removing the POS system from the Apricot Lane boutiques, and encouraging Joli Grace to make false claims against CVI. *Id.* ¶¶ 5, 133. Most recently Love Grace and Art Lancaster have apparently convinced Joli Grace and Stacie Lancaster to convert their Apricot Lane boutiques to Blu Spero boutiques in violation of the post-termination requirements of the Hattiesburg Franchise Agreement, and in violation on the ongoing terms of the Spanish Fort and Mandeville Franchise Agreements. (Martin Decl. ¶¶ 3-4; Petersen Decl. ¶¶ 19-21, Exs. M-O.) As pled by CVI in its counterclaim, Art Lancaster and Love Grace induced Joli Grace and Stacie Lancaster to take the above actions. Counterclaim, ¶134. This interference resulted in breaches of the Franchise Agreements and has resulted in substantial damage to CVI.  Counterclaim ¶ 135.  Further, these allegations are supported by facts, not mere conclusions.  CVI's allegations, taken as true (as they must be), more that adequately state a claim for tortious interference with contractual relations. If the Court views this otherwise, CVI should be given the opportunity to amend its Counterclaim to add additional facts which it certainly could do.

### 5.     This Court has Specific Jurisdiction over Art Lancaster and Love Grace in Connection with their Tortious Actions Directed at a CVI, a California Entity.

The tortious actions of Love Grace and Art Lancaster create an additional basis for specific jurisdiction over both of them. "A forum may assert specific jurisdiction over a nonresident defendant where an alleged injury arises out of or relates to actions by the defendant *himself* that are purposefully directed toward forum residents, and where jurisdiction would not otherwise offend 'fair play and substantial justice.' Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum." *Burger King Corp. v. Rudzewicz* 471 U.S. 462, 463 (1985). Here, Love Grace's and Art Lancaster's actions, including but not limited to interfering with the contractual relations of CVI, a California entity whose contracts specifically require a

1    California venue for any and all litigation, were directly intended to harm a California entity.

2    Defendants have therefore directed their tortious conduct to a California entity and have subjected

3    themselves to personal jurisdiction in this venue for adjudication of their tortious conduct.

4

5              **6.        CVI Has Properly Alleged an Accounting Claim Because Counter-
                          Defendants Completely Control the Information Needed to Determine
6                         What Damages Are Owed.**

7              "The right to an accounting can arise from the possession by the defendant of money or

8    property which, because of the defendant's relationship with the plaintiff, the defendant is obliged to

9    surrender." *Teselle v. McLoughlin* 173 Cal. App. 4th 156, 179–80 (2009) (citing 1A CORPUS JURIS

10   SECUNDUM (2005) ACCOUNTING, § 6, p. 7). "However, a fiduciary relationship between the parties is

11   not required to state a cause of action for accounting. All that is required is that some relationship

12   exists that requires an accounting." *Id.* (citing *Kritzer v. Lancaster*, 96 Cal. App. 2d 1, 7 (1950)). "A

13   right to an accounting is derivative; it must be based on other claims." *Janis v. Cal. State Lottery*

14   *Com.*, 68 Cal. App. 4th 824, 833 (1998).

15             "[T]he purpose of the accounting is, in part, to discover what, if any, sums are owed to the

16   plaintiff, and an accounting may be used as a discovery device." *Teselle*, 173 Cal. App. 4th at 180

17   (citing 1A CORPUS JURIS SECUNDUM (2005) ACCOUNTING, § 26, p. 26). "An action for accounting is

18   not amenable to a motion for summary judgment or summary adjudication upon a showing that

19   plaintiff does not possess and cannot reasonably obtain the evidence needed to compel the

20   accounting, because the very purpose of the accounting is to obtain such evidence." *Id.*

21             Here, as alleged in the Compliant, Joli Grace is a franchisee of CVI.  Counterclaim ¶ 20.  Joli

22   Grace, pursuant to its Franchise Agreements, is required to use CVI's Point of Sale system which

23   tracks the sale of items so that the royalty amounts due to CVI can be calculated.  *Id.* ¶ 156.  Joli

24   Grace has improperly removed CVI's POS system so that CVI is unable to determine Joli Grace's

25   sales, and the amount Joli Grace owes for royalty payments.  *Id.* ¶ 157.  Because of Joli Grace's

26   position as a franchisee, it is obligated to report to CVI on its sales. It is the only entity that can do so

27   and who is in possession of the requested information.  *Id.*  The request for an accounting flows from

28

1  the breach of contract claims alleged against Joli Grace and is necessary so that CVI can determine its

2  damages related to non-payment of royalties. CVI is therefore entitled to an accounting.

3  **IV.    CONCLUSION**

4          With the uncontroverted evidence alleged in the Counterclaim, and with the additional

5  declarations submitted by CVI in support of this Opposition, CVI has met its burden of a *prima facie*

6  showing that this Court has jurisdiction over Art Lancaster, Love Grace, the Trust, and Trustee and

7  that Art Lancaster and Love Grace are the alter egos of Stacie Lancaster and Joli Grace.  CVI has also

8  pled all of its causes of action with sufficient facts and with the requisite particularity to meet the

9  applicable pleading standards.   Therefore, CVI respectfully requests that this Court deny Counter-

10 Defendants' Motion in its entirety.

11         If the Court is inclined to grant one more of Counter-Defendants challenges as to the

12 sufficiency of the facts pled in support of CVI's causes of action, CVI should be given the

13 opportunity to amend to state further facts in support of its claims.

14 Dated:  October 17, 2016.                              BOUTIN JONES INC.

15

16                                        By:   */s/ Robert D. Swanson*
                                                Robert D. Swanson
17                                              Attorney for Defendant and Counter-
                                                Claimant Country Visions, Inc.,
18                                              a California corporation

19

20

21

22

23

24

25

26

27

28