UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| JOLI GRACE, LLC, a Louisiana Limited Liability Company,<br><br>              Plaintiff,<br><br>     v.<br><br>COUNTRY VISIONS, INC., a California Corporation,<br><br>              Defendant. | CIV. NO.: 2:16-1138 WBS EFB<br><br>MEMORANDUM AND ORDER RE: MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM AND MOTION FOR PRELIMINARY INJUNCTION |
| AND RELATED COUNTERCLAIMS. | |

----oo0oo----

        Plaintiff Joli Grace, LLC ("Joli Grace") brought this

action against defendant Country Visions, Inc. ("Country

Visions") for breach of contract and declaratory relief arising

from a series of franchise agreements for plaintiff's use of

defendant's retail stores under the name "Apricot Lane."  Country

Visions brought a counterclaim against Joli Grace, Stacie

Lancaster Children's Trust ("Trust"), Christine Thornhill, Arthur

1

1   Lancaster, Love Grace Holdings, Inc. ("Love Grace"), and Stacie

2   Lancaster (collectively "counter-defendants") for breach of

3   contract, declaratory relief, violations of the Lanham Act,

4   violations of California Unfair Competition Law, violations of

5   Louisiana Unfair Trade Practices and Consumer Protection Law

6   ("LUTPA"), tortious interference with contracts, fraud, and

7   accounting arising out of the same franchise agreements.  Before

8   the court are counter-defendants' motion to dismiss pursuant to

9   Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6) and Country

10  Visions's motion for preliminary injunctive relief.

11  I.   Factual and Procedural History

12          Country Visions is a California corporation that

13  operates and grants franchises for Apricot Lane, a women's

14  specialty clothing boutique.  (First Am. Countercl. ¶¶ 1, 10

15  (Docket No. 14).)  Joli Grace is a Louisiana corporation that the

16  Trust solely owns, Stacie Lancaster manages, and Stacie Lancaster

17  and her husband Arthur Lancaster founded.  (Id. ¶¶ 1-2, 11, 13,

18  24.)  Love Grace is a Delaware corporation that Arthur Lancaster

19  solely owns and the Lancasters allegedly founded after the

20  founding of Joli Grace.  (Id. ¶¶ 4, 16, 44.)

21          Beginning in 2009, Joli Grace allegedly received

22  approval and began opening a series of Apricot Lane boutiques as

23  a franchisee.  (Id. ¶ 2.)  Stacie Lancaster, on behalf of Joli

24  Grace, executed Franchise Agreements for these Apricot Lane

25  stores, which contained non-compete clauses and held Stacie

26  Lancaster personally liable for breaches of the Franchise

27

28

1   Agreements.[1]  (Id. ¶¶ 22-23.)  Stacie Lancaster allegedly manages

2   the day-to-day tasks of Joli Grace on behalf of the Trust and

3   Arthur Lancaster is in charge of financial responsibilities for

4   Joli Grace.  (Id. ¶ 25.)

5          By April 2015, Love Grace opened its first Blu Spero

6   store.  (Id. ¶¶ 29, 41.)  Blu Spero boutiques allegedly sell the

7   same brands and merchandise as Apricot Lane.  (Id. ¶ 3.) Arthur

8   Lancaster manages Blu Spero and is the sole owner, but a press

9   release previously identified Stacie Lancaster as the founder of

10  Blu Spero.  (Id. ¶¶ 39, 43.)  Country Visions alleges that Joli

11  Grace and Stacie Lancaster have breached several aspects of the

12  Franchise Agreements since the opening of the Blu Spero stores.

13  (Id. ¶¶ 32-33, 35, 54(d).)

14         In August 2016, Country Visions specifically terminated

15  the Franchise Agreement for Joli Grace's Apricot Lane store in

16  Hattiesburg, Mississippi for failure to timely cure a default.

17  (Id. ¶¶ 57-59.)  Pursuant to the Hattiesburg Franchise Agreement,

18  Country Visions allegedly informed Joli Grace that it intended to

19  exercise its right to take possession of the premises of the

20  Hattiesburg store.  (Id. ¶ 59.)  Joli Grace has not turned over

21  the Hattiesburg Lease to Country Visions.  (Id. ¶ 60.)

22         Joli Grace initiated this action against Country

23  Visions, alleging breach of contract and seeking declaratory

24  _____

25         [1]   The non-compete clauses prohibit Joli Grace and Stacie
    Lancaster from owning, engaging in, or having any interest in any
26  business "that sells through any channel of distribution of [sic]
    any of the types of merchandise that are the same as or similar
27  to the types of merchandise being sold through the Specialty
    Stores, unless granted prior approval in writing" by Country
28  Visions.  (Id. ¶ 28, Ex. K.)

1   relief regarding the enforceability of the non-compete clauses.

2   (See Docket No. 1.)  Country Visions then filed a counterclaim

3   against Joli Grace and the other counter-defendants, alleging the

4   following causes of action: (1) breach of the Franchise

5   Agreements; (2) breach of the personal guarantees; (3) breach of

6   contract for failure to turn over the Hattiesburg Lease; (4)

7   breach of contract for failure to pay past due royalties; (5)

8   declaratory relief that the transfer of sole membership in Joli

9   Grace from Stacie Lancaster to the Trust is void; (6) violation

10  of the Lanham Act for the operation of Hattiesburg Apricot Lane

11  store; (7) violation of the Lanham Act for the operation of the

12  Blu Spero stores; (8) violation of California's Unfair

13  Competition Law; (9) violation of LUTPA; (10) tortious

14  interference with contracts; (11) fraud; and (12) accounting.

15          Counter-defendants move to dismiss all causes of action

16  against Love Grace, Arthur Lancaster, the Trust, and Thornhill

17  for lack of personal jurisdiction, and some causes of actions on

18  other grounds.  Country Visions moves for preliminary injunctive

19  relief requiring Joli Grace and Stacie Lancaster to turn over the

20  Hattiesburg Lease, requiring counter-defendants to cease

21  operating the Blu Spero boutique at the Hattiesburg store

22  location, and preventing counter-defendants from using the

23  Apricot Lane mark at the Hattiesburg store.

24  II.  Discussion

25          A.    Rule 12(b)(2) Motion

26          A plaintiff has the burden of establishing that the

27  court has personal jurisdiction over a defendant.  Doe v. Unocal

28  Corp., 248 F.3d 915, 922 (9th Cir. 2001).  Where the court does

1  not hold an evidentiary hearing and the motion is based on

2  written materials, the plaintiff need only establish a prima

3  facie showing of personal jurisdiction.  Schwarzenegger v. Fred

4  Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).  In such a

5  case, "[u]ncontroverted allegations in the complaint must be

6  taken as true" and "[c]onflicts between parties over statements

7  contained in affidavits must be resolved in the plaintiff's

8  favor."  Id.

9       If there is no applicable federal statute governing

10  personal jurisdiction, the court applies the law of the state in

11  which it sits.  Love v. Associated Newspapers, Ltd., 611 F.3d

12  601, 608-09 (9th Cir. 2010).  "California's long-arm jurisdiction

13  statute is coextensive with federal due process requirements."

14  Id.; see also Cal. Code Civ. Proc. § 410.10.  Due process

15  requires that for a nonresident defendant to be subject to the

16  court's jurisdiction, the defendant must "have certain minimum

17  contacts with [the forum state] such that the maintenance of the

18  suit does not offend traditional notions of fair play and

19  substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S.

20  310, 316 (1945) (citation omitted).  The strength of contacts

21  required depends on which of the two categories of personal

22  jurisdiction a litigant invokes: specific jurisdiction or general

23  jurisdiction.  Ranza v. Nike, Inc., 793 F.3d 1059, 1068 (9th Cir.

24  2015) (citing Daimler AG v. Bauman, 134 S. Ct. 746, 754 (2014)).

25       Specific jurisdiction exists when a case "aris[es] out

26  of or relate[s] to the defendant's contacts with the forum."

27  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408,

28  414 n.8 (1984).  The focus is on the "relationship among the

1  defendant, the forum, and the litigation." <u>Shaffer v. Heitner</u>,

2  433 U.S. 186, 204 (1977).  "[T]he relationship must arise out of

3  contacts that the defendant <u>himself</u> creates with the forum

4  state." <u>Walden v. Fiore</u>, 134 S. Ct. 1115, 1122 (2014).  The

5  court must thus "look[] to the defendant's contacts with the

6  forum State itself, not the defendant's contacts with persons who

7  reside there." <u>Id.</u>

8          Counter-defendants do not contest that the court has

9  personal jurisdiction over Joli Grace and Stacie Lancaster.  (<u>See</u>

10  Mot. 7:10-14:26 (Docket No. 17-1).)  Thus, the question is

11  whether the court has personal jurisdiction over the remaining

12  counter-defendants.

13          1.    Personal Jurisdiction over Arthur Lancaster

14                and Love Grace

15          Country Visions argues the court has personal

16  jurisdiction over Arthur Lancaster and Love Grace because they

17  are alter egos of Stacie Lancaster and Joli Grace or,

18  alternatively, in connection with their tortious actions directed

19  at Country Visions.[2]

20          The court can exercise personal jurisdiction over an

21  entity that would not ordinarily be subject to personal

22  jurisdiction when it is an alter ego of an entity that the court

23  has personal jurisdiction over.  <u>Ranza</u>, 793 F.3d at 1070-71 ("As

24  in the context of corporate liability, the veil separating

25  affiliated corporations may also be pierced to exercise personal

26          _____

27          [2]    Country Vision, as the party bearing the burden of
    proving jurisdiction, does not distinguish between Arthur

28  Lancaster and Love Grace when discussing whether the court has
    personal jurisdiction over them.

                                    6

1    jurisdiction over a foreign defendant in certain limited

2    circumstances.").  This applies to individuals and corporations.

3    Transamerica Corp. v. Compana, LLC, Civ. No. 05-00549 MJJ, 2005

4    WL 2035594, at *4 (N.D. Cal. Aug. 22, 2005) (quoting Patin v.

5    Thoroughbred Power Boats Inc., 294 F.3d 640, 653 (5th Cir.

6    2002)).  For a court to exercise personal jurisdiction over a

7    defendant under an alter ego theory, two conditions must exist:

8    "(1) there is such unity of interest and ownership that the

9    separate personalities [of the entities] no longer exist and (2)

10   that failure to disregard [their separate identities] would

11   result in fraud or injustice."  Ranza, 793 F.3d at 1073

12   (alteration in original) (quoting Unocal, 248 F.3d at 926).

13           The first prong looks for "pervasive control," id., and

14   whether "the parent controls the subsidiary 'to such a degree as

15   to render the latter the mere instrumentality of the former,'"

16   Unocal, 248 F.3d at 926 (quoting Calvert v. Huckins, 875 F. Supp.

17   674, 678 (E.D. Cal. 1995) (Whelan, J.)).  Factors to be

18   considered include (1) commingling of funds and assets; (2)

19   observation of corporate formalities; (3) use of the same offices

20   and employees; (4) identity of directors and officers; (5) sole

21   ownership of all stock by one individual or members of a family;

22   (6) inadequate capitalization; (7) failure to maintain arm's

23   length relationship; (8) use of the corporation as a shell for a

24   single venture or the business of an individual or another

25   corporation; and (9) manipulation of assets and liabilities

26   between entities.  Hall-Magner Grp. v. Firsten, Civ. No. 11-312

27   JLS POR, 2011 WL 5036027, at *3 (S.D. Cal. Oct. 24, 2011);

28   Associated Vendors, Inc. v. Oakland Meat Co., 210 Cal. App. 2d

1   825, 838-40 (1st Dist. 1962).  This is a high standard, and

2   courts have found "no alter ego relationship [is] created [even

3   when a] parent company guaranteed loans for the subsidiary,

4   reviewed and approved major decisions, placed several of its

5   directors on the subsidiary's board, and was closely involved in

6   the subsidiary's pricing decisions."  Ranza, 793 F.3d at 1074-75

7   (quoting Unocal, 248 F.3d at 928).

8            Applying the nine factors and taking conflicts between

9   affidavits in favor of Country Visions, there are insufficient

10  allegations that Love Grace and Arthur Lancaster are alter egos

11  of Joli Grace and Stacie Lancaster.  Most importantly, there is

12  no under-capitalization in this case.  See Firstmark Capital

13  Corp. v. Hempel Fin. Corp., 859 F.2d 92, 94 (9th Cir. 1988) ("We

14  have held that under California law the 'kind of inequitable

15  result that makes alter ego liability appropriate is an abuse of

16  the corporate form, such as under-capitalization . . . .'"

17  (quoting Orloff v. Allman, 819 F.2d 904, 909 (9th Cir. 1987))).

18  If an entity is a shell without assets, the plaintiff is

19  effectively prevented from recovery.  See id.  Joli Grace has

20  assets in excess of $2 million with a net worth in excess of

21  $650,000.  (Stacie Lancaster Decl. ("Stacie Decl.") ¶ 8, Ex. 1

22  (Docket No. 17-2).)  Further, Country Visions has not alleged

23  that Arthur Lancaster or Love Grace treat Joli Grace's assets as

24  their own assets.  Joli Grace's adequate capitalization weighs

25  strongly in favor of finding Joli Grace is not an alter ego of

26  Arthur Lancaster or Love Grace.

27            There is some evidence of commingling of assets,

28  however.  Country Visions alleges at least three Apricot Lane

8

1   stores operated by Joli Grace sell Blu Spero merchandise.  (First

2   Am. Countercl. ¶ 42; Liming Decl. ¶¶ 2, 6 (Docket No. 26); Liming

3   Decl. Exs. 2-4 (Docket Nos. 26-2 to -4).)  Country Visions also

4   alleges at least two former Apricot Lane stores are now Blu Spero

5   stores operated by Arthur Lancaster and Love Grace, even though

6   the Blu Spero stores still sell Apricot Lane clothing inside.

7   (First Am. Countercl. ¶ 41; Petersen Decl. ¶ 21; Petersen Decl.

8   Exs. N-O (Docket No. 25-14 to -15); Martin Decl. ¶¶ 3, 5, Exs. A-

9   B (Docket No. 27).)

10          It is uncontroverted that Joli Grace maintains

11   corporate formalities and Joli Grace and Love Grace have separate

12   directors and officers.  Stacie Lancaster, in her declaration,

13   stated that Joli Grace maintains separate books and records.

14   (Stacie Decl. ¶ 4.)  Joli Grace's balance sheet also shows that

15   Arthur Lancaster loaned Joli Grace money, suggesting Joli Grace

16   is maintaining its corporate formalities.  (See id. ¶ 6, Ex. 1);

17   cf. Kramer Motors, Inc. v. Britis Leyland, Ltd., 628 F.2d 1175,

18   1177 (9th Cir. 1980) (holding no alter ego relationship was

19   created when parent company guaranteed loans for subsidiary,

20   among other factors).  Both Stacie Lancaster and Arthur Lancaster

21   affirm that there is no overlap between directors and officers in

22   Love Grace and Joli Grace.  (Stacie Decl. ¶ 4; Arthur Lancaster

23   Decl. ("Arthur Decl.") ¶ 4 (Docket No. 17-3).)  Both of these

24   factors favor a finding of no alter ego.

25          Counter-defendants do not contest that some employees

26   work for both Love Grace and Joli Grace.  (Arthur Decl. ¶ 7.)

27   This includes Arthur Lancaster, who has been Joli Grace's primary

28   contact person with Country Visions for new stores, construction,

1    royalties, and financial matters.  (Petersen Decl. ¶¶ 5-6.)  At

2    Love Grace, Stacie Lancaster has her own phone extension where

3    there is a voicemail that states, "You have reached Stacie

4    Lancaster with Love Grace."  (Petersen Decl. ¶ 13.)  Counter-

5    defendants also concede that Love Grace and Joli Grace have the

6    same corporate address.  (Arthur Decl. ¶ 7.)  Such allegations,

7    however, are insufficient to justify viewing Joli Grace as Love

8    Grace and Arthur Lancaster's alter ego.  See Ranza, 793 F.3d at

9    1074 (finding employees moving between entities is not enough to

10   undermine the entities' formal separation); Martinez v. Manheim

11   Cent. Cal., Civ. No. 1:10-1511 SKO, 2011 WL 1466684, at *6 (E.D.

12   Cal. Apr. 18, 2011) ("The fact that [a parent corporation] is

13   headquartered in the same place as its subsidiary and shares one

14   common director with [the subsidiary] does not indicate that the

15   two corporations have indistinct personalities.").

16          The ownership of Love Grace and Joli Grace also favors

17   a finding of no alter ego.  The Trust solely owns Joli Grace, and

18   Stacie Lancaster manages Joli Grace as the trustor of the Trust.

19   (Stacie Decl. ¶ 3.)  Arthur Lancaster solely owns Love Grace.

20   (Arthur Decl. ¶ 3.)  While Stacie Lancaster, on at least one

21   occasion, represented to the public that she is the founder of

22   Blu Spero, (Petersen Decl. Ex. F (Docket No. 25-6)), her

23   management of Love Grace and Joli Grace would not be enough to

24   establish an alter ego relationship, Patterson v. Home Depot,

25   USA, Inc., 684 F. Supp. 2d 1170, 1178-79 (D. Ariz. 2010) (holding

26   that a parent and subsidiary having the same president was

27   insufficient to justify disregarding the corporate form).

28          The factor most indicative of an alter ego relationship

is the lack of an arm's length relationship.  At least one

Apricot Lane store issues receipts stating "Follow us on Social

Media @ BluSpero."  (Petersen Decl. ¶ 22, Ex. P (Docket No. 25-

16).)  In one Blu Spero store that used to be an Apricot Lane

store, an employee informed all customers that the store

underwent a name change, "but everything else is the same."

(Martin Decl. ¶ 4.)  When emailing Country Visions on Joli

Grace's behalf, Arthur Lancaster repeatedly represented that "we

are not opening and [sic] new stores."  (Id. ¶ 7 (emphasis

added); Petersen Decl. Ex. C (Docket No. 25-3).)  Viewed in

Country Visions's favor, Arthur Lancaster's use of "we"

demonstrates control and involvement in Joli Grace's operations.

Even after Arthur Lancaster informed Country Visions that he

would no longer be involved with the day-to-day operations of

Joli Grace, he continued to act as the primary point of contact

on financial and royalties matters.  (See First Am. Countercl. ¶

27, Ex. M; Petersen Decl. ¶ 7, Ex. D (Docket No. 25-4).)

        Country Visions has presented a wealth of evidence in

support of a relationship between Love Grace and Joli Grace, but

this evidence does not show that there was such a unity of

interest that their separate corporate personalities no longer

existed.  Unocal, 248 F.3d at 928; see Kramer Motors, 628 F.2d at

1177 (holding no alter ego relationship existed when parent

guaranteed loans for the subsidiary, reviewed and approved major

decisions, placed several of its directors on the subsidiary's

board, and was closely involved in the subsidiary's pricing

decisions).  Country Visions has failed to show how the

relationship between the parties "is typified by [Arthur

1   Lancaster and Love Grace's] control of [Joli Grace]'s internal

2   affairs or daily operations."  See Unocal, 248 F.3d at 926.

3   Because Country Visions has not met the unity of interest prong,

4   the court need not address the second prong--whether failure to

5   disregard the separate identities would result in fraud or

6   injustice.  See Ranza, 793 F.3d at 1073.  The court will not

7   exercise personal jurisdiction over Arthur Lancaster and Love

8   Grace on the basis of an alter ego relationship.

9          The court likewise does not have specific jurisdiction

10  over Arthur Lancaster and Love Grace for claims seven, eight,

11  nine, and ten.  In its opposition to counter-defendants' motion

12  to dismiss, Country Visions argues Love Grace and Arthur

13  Lancaster's actions were intended to harm a California entity--

14  Country Visions--and thus they are subject to this court's

15  jurisdiction.  (Counter-claimant's Opp'n 29:26-30:3 (Docket No.

16  24).)  However, "injury to [Country Visions] is not a sufficient

17  connection to the forum."  See Walden, 134 S. Ct. at 1125.

18  "[T]he plaintiff cannot be the only link between the defendant

19  and the forum."  Id. at 1122.  Country Visions has presented no

20  evidence that Love Grace and Arthur Lancaster directed their

21  actions to the forum state, and thus Country Visions has not met

22  its burden establishing that the court has specific jurisdiction

23  over Love Grace and Arthur Lancaster.

24          Accordingly, the court must grant counter-defendants'

25  12(b)(2) motion to dismiss Country Visions's claims against

26  Arthur Lancaster and Love Grace.[3]

27  _____

28          [3]   Because the court lacks personal jurisdiction over
    Arthur Lancaster and Love Grace, the court need not consider

                                  12

1           2.      Personal Jurisdiction over Thornhill and the

2                   Trust

3           Counter-defendants also argue that the court does not

4    have personal jurisdiction over the Trust or Thornhill.  Country

5    Visions contends it has personal jurisdiction over the Trust and

6    Thornhill because of the forum selection clauses in the Franchise

7    Agreements.

8           It is well established that personal jurisdiction is a

9    waivable right.  See, e.g., Burger King v. Rudzewicz, 471 U.S.

10   462, 472 n.14 (1985).  Relevant here, a defendant may consent to

11   personal jurisdiction through the execution of a valid forum

12   selection clause.  See id. ("[P]arties frequently stipulate in

13   advance to submit their controversies for resolution within a

14   particular jurisdiction."); Nat'l Equip. Rental, Ltd. v.

15   Szukhent, 375 U.S. 311, 315-16 (1964) ("[P]arties to a contract

16   may agree in advance to submit to the jurisdiction of a given

17   court . . . .").

18          Here, the language of the pertinent forum selection

19   clause is clear.  The "Franchisee and Franchisor hereby submit

20   and consent to the exclusive jurisdiction of the state and

21   federal courts with proper subject matter jurisdiction located in

22   the county or the judicial district in which Franchisor maintains

23   its principal offices at the time of such litigation."  (Petersen

24   Decl. Ex. A ("Franchise Agreement") § 23.C (Docket No. 25-1).)

---

25   Arthur Lancaster and Love Grace's motion to dismiss the First
26   Amended Counterclaim under Rule 12(b)(6).  See Fasugbe v. Willms,
     Civ. No. 2:10-2320 WBS KJN, 2011 WL 2119128, at *4, *7 (E.D. Cal.
27   May 26, 2011) (holding defendant's Rule 12(b)(6) motion was moot
     once the court determined it did not have personal jurisdiction
28   over defendant pursuant to Rule 12(b)(2)).

1  It is undisputed that Joli Grace is the Franchisee, not the Trust

2  or Thornhill.  (<u>Id.</u> at 1.)  Neither the Trust nor Thornhill are

3  signatories to any agreement, let alone an agreement with a forum

4  selection clause binding more than only Joli Grace as the

5  Franchisee.  Under the clear terms of the forum selection clause,

6  the Trust and Thornhill did not waive personal jurisdiction.

7        Country Visions does not argue there is any other basis

8  for the court to exercise personal jurisdiction over the Trust

9  and Thornhill.  The Trust is a Louisiana entity and Thornhill is

10  a Louisiana resident, and there are no allegations that either

11  counter-defendant has sufficient minimum contacts with California

12  to justify the court exercising personal jurisdiction over the

13  Trust or Thornhill.  (<u>See</u> Stacie Decl. ¶ 3.)

14        Accordingly, the court will grant counter-defendants'

15  Rule 12(b)(2) motion to dismiss Country Visions's claims against

16  the Trust and Thornhill.

17        B.      <u>Rule 12(b)(6) Motion</u>

18        On a motion to dismiss under Rule 12(b)(6), the court

19  must accept the allegations in the complaint as true and draw all

20  reasonable inferences in favor of the plaintiff.  <u>Scheuer v.</u>

21  <u>Rhodes</u>, 416 U.S. 232, 236 (1974), <u>overruled on other grounds by</u>

22  <u>Davis v. Scherer</u>, 468 U.S. 183 (1984); <u>Cruz v. Beto</u>, 405 U.S.

23  319, 322 (1972).  To survive a motion to dismiss, a plaintiff

24  must plead "only enough facts to state a claim to relief that is

25  plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S.

26  544, 570 (2007).  "The plausibility standard is not akin to a

27  'probability requirement,' but it asks for more than a sheer

28  possibility that a defendant has acted unlawfully." <u>Ashcroft v.</u>

14

1    <u>Iqbal</u>, 556 U.S. 662, 678 (2009).  "A claim has facial

2    plausibility when the plaintiff pleads factual content that

3    allows the court to draw the reasonable inference that the

4    defendant is liable for the misconduct alleged."  <u>Id.</u>  Under this

5    standard, "a well-pleaded complaint may proceed even if it

6    strikes a savvy judge that actual proof of those facts is

7    improbable."  <u>Twombly</u>, 550 U.S. at 556.

8         "Threadbare recitals of the elements of a cause of

9    action, supported by mere conclusory statements, do not suffice."

10   <u>Iqbal</u>, 556 U.S. at 678; <u>see also id.</u> at 679 ("While legal

11   conclusions can provide the framework of a complaint, they must

12   be supported by factual allegations.").

13            1.  <u>Violation of Lanham Act</u>

14        In its seventh cause of action, Country Visions alleges

15   counter-defendants violated the Lanham Act by using the federally

16   registered "Apricot Lane" trademark, creating customer confusion

17   through its use, and falsely representing the relationship

18   between Apricot Lane and Blu Spero.  Counter-defendants argue

19   claim seven is two separate Lanham Act claims--false designation

20   of origin and false advertising--which are subject to Rule 9(b)'s

21   heightened pleading standard.  In its opposition, Country Visions

22   argues claim seven is a trademark infringement claim that is not

23   subject to Rule 9(b)'s heightened pleading standard.  See <u>Vess v.</u>

24   <u>Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1104-05 (9th Cir. 2003).

25        First, it is unclear what cause of action Country

26   Visions is alleging in claim seven.  The claim is labeled

27   "[v]iolation of the Lanham Act."  (First Am. Countercl. 21:18.)

28   The claim contains allegations relating to false advertising and

1   misrepresentations--such as allegations that Blu Spero falsely

2   claimed it is a "sister store" of Apricot Lane and allegations

3   that Love Grace misrepresented the nature, characteristics, or

4   qualities of its goods, services, or commercial activities.  (Id.

5   ¶ 108.)  The claim also contains allegations relating to

6   trademark infringement, such as the allegation that Apricot Lane

7   is a federally registered trademark.  (Id. ¶ 107.)

8          Second, even if the court construes this claim as a

9   trademark infringement claim as argued by Country Visions,

10  Country Visions fails to allege sufficient facts to meet the

11  standard pleading requirements.  To allege a trademark

12  infringement claim, the plaintiff must allege (1) that it has a

13  valid, protectable trademark and (2) that the defendant's use of

14  the mark is likely to cause confusion.  Applied Info. Scis. Corp.

15  v. eBay, Inc., 511 F.3d 966, 969 (9th Cir. 2007).  Country

16  Visions sufficiently alleges it owns a federally registered

17  trademark in "Apricot Lane."  (First Am. Countercl. ¶ 107.)

18         Country Visions does not sufficiently allege likelihood

19  of consumer confusion.  Likelihood of confusion looks at "whether

20  use of the plaintiff's trademark by the defendants is 'likely to

21  cause confusion or to cause mistake, or to deceive as to the

22  affiliation, connection, or association' of the two products."

23  Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792, 807 (9th

24  Cir. 2003) (quoting Cairns v. Franklin Mint Co., 292 F.3d 1139,

25  1149 (9th Cir. 2002)).  There can be a high risk of consumer

26  confusion when a terminated franchisee continues to use the

27  former franchisor's trademark.  See Dunkin Donuts, Inc. v. All

28  Madina Corp., Civ. No. A 04-1399 (JAG), 2006 WL 842403, at *4

1    (D.N.J. Mar. 28, 2006); 4 McCarthy, supra, § 25:31.  Here, the

2    only allegation regarding Joli Grace's use of the Apricot Lane

3    mark is that Joli Grace has "sold Blu Spero labeled merchandise

4    in at least three Apricot Lane stores, thereby causing confusion

5    amongst customers regarding the relationship between Apricot Lane

6    and Blu Spero."[4]  (Id. ¶ 108.)  There are no allegations that

7    Joli Grace used the Apricot Lane mark after the termination of

8    any Franchise Agreement.  Likewise, Country Visions alleges Joli

9    Grace sold Blu Spero products in Apricot Lane stores without its

10   permission, but Country Visions does not allege that such

11   permission was required under the Franchise Agreement.  Absent an

12   allegation that Joli Grace and Stacie Lancaster used the mark in

13   an unpermitted manner, Country Visions does not adequately allege

14   Joli Grace and Stacie Lancaster committed trademark infringement.

15          It is unclear whether claim seven is a cause of action

16   for trademark infringement, false advertisement, or false

17   designation of origin.  Even if claim seven is a cause of action

18   for trademark infringement, Country Visions fails to allege

19   sufficient facts.  Accordingly, the court must grant counter-

20   defendants' motion to dismiss the Lanham Act claim.[5]

21          2.   California Unfair Competition Law

22          In its eighth cause of action, Country Visions alleges

23   ───────────────────

24         [4]   Country Visions also alleges misuse of the Apricot Lane
     mark by Love Grace and Arthur Lancaster at Blu Spero stores.
25   However, as discussed above, the court does not have personal
     jurisdiction over Love Grace or Arthur Lancaster.

26
           [5]   Because the court will dismiss claim seven in its
27   entirety, the court need not address counter-defendants' motion
     to dismiss claim seven as to Stacie Lancaster for failure to
28   properly allege Stacie Lancaster is an alter ego of Joli Grace.

17

1   counter-defendants violated California's Unfair Competition Law

2   by engaging in "fraudulent and/or unfair competition" acts.

3   (First Am. Countercl. ¶ 116.)   California Business and

4   Professions Code § 17200 <u>et seq.</u> prohibits unfair competition,

5   which is defined to include "any unlawful, unfair, or fraudulent

6   business act or practice."   Cal. Bus. & Prof. Code § 17200.

7   "Each prong of the UCL is a separate and distinct theory of

8   liability . . . ."   <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1127

9   (9th Cir. 2009) (citing <u>S. Bay Chevrolet v. Gen Motors Acceptance</u>

10  <u>Corp.</u>, 72 Cal. App. 4th 861, 886 (4th Dist. 1999)).

11      Country Visions does not state which prong of the UCL

12  it is relying upon.   It alleges that counter-defendants were

13  engaged in "acts of fraudulent and/or unfair competition," (First

14  Am. Countercl. ¶ 116), while also alleging that counter-

15  defendants "misle[d] the general public" through such "fraudulent

16  business act or practice," (<u>id.</u> ¶ 117).   The only specific

17  factual allegation identified in Country Visions's UCL claim is

18  that the counter-defendants actions will likely lead to public

19  into believing Blu Spero and Apricot Lane are sister stores.

20  (<u>Id.</u>)   Country Visions does not allege which acts were fraudulent

21  or constituted unfair competition.   Thus, Country Visions's claim

22  is vague and conclusory, regardless of which prong or pleading

23  standard applies.   See <u>Randhawa v. Skylux Inc.</u>, Civ. No. 2:09-

24  02304 WBS DAD, 2012 WL 5349403, at *2 (E.D. Cal. Oct. 26, 2012)

25  (dismissing plaintiffs' UCL claims where it was unclear which

26  prong of the UCL the plaintiffs rely upon).

27      Accordingly, the court will grant counter-defendants'

28  motion to dismiss the UCL claim.

1     3. Louisiana Unfair Trade Practices and Consumer

2       Protection Law

3    In its ninth cause of action, Country Visions alleges

4 counter-defendants violated LUTPA by engaging in "unfair methods

5 of competition or unfair or deceptive acts or practices in the

6 conduct of any trade or commerce." (First Am. Countercl. ¶ 126.)

7 LUTPA declares unlawful "[u]nfair methods of competition and

8 unfair or deceptive acts or practices in the conduct of any trade

9 or commerce." La. Stat. Ann. § 51:1405. The elements of a cause

10 of action under LUTPA are: "(1) an unfair or deceptive trade

11 practice declared unlawful; (2) that impacts a consumer, business

12 competitor, or other person to whom the statute grants a private

13 right of action; (3) which has caused ascertainable loss."

14 FloQuip, Inc. v. Chem Rock Techs., Civ. No. 6:16-0035, 2016 WL

15 4574436, at *16 (W.D. La. June 20, 2016). A practice is unfair

16 "when the practice is unethical, oppressive, unscrupulous, or

17 substantially injurious." Pinero v. Jackson Hewitt Tax Serv.

18 Inc., 594 F. Supp. 2d 710, 720-21 (E.D. La. 2009) (citing

19 Jefferson v. Chevron U.S.A. Inc., 713 So. 2d 785, 792 (La. App. 4

20 Cir. 1998)). A trade practice is deceptive when it amounts to

21 "fraud, deceit or misrepresentation." Id. Thus, "LUTPA claims

22 are not limited solely to allegations of fraud, but may be

23 independently premised on a range of non-fraudulent conduct."

24 Mabile v. BP, p.l.c., Civ. No. 11-1783, 2016 WL 5231839, at *24

25 (E.D. La. Sept. 22, 2016).

26    Similar to the UCL claim, Country Visions does not

27 clearly state which prong of the LUTPA it is relying upon. In

28 its nine line, five paragraph LUTPA claim, Country Visions

1   alleges that counter-defendants "engaged in unfair methods of

2   competition or unfair or deceptive acts or practices in the

3   conduct of any trade or commerce." (First Am. Countercl. ¶ 126.)

4   These allegations refer to conduct that is fraudulent and non-

5   fraudulent as a basis for Country Visions's LUTPA claim.  Country

6   Visions has not provided notice of which basis it seeks to

7   recover against counter-defendants under LUTPA.  Cf. Randhawa,

8   2012 WL 5349403, at *2 (dismissing UCL claims for failure to

9   identify which prong of the UCL the plaintiffs rely upon).  This

10   claim only contains allegations that are mere recitations of the

11   elements of LUTPA and are vague and conclusory.

12        Accordingly, the court will grant counter-defendants'

13   motion to dismiss the LUTPA claim.

14        4.   Fraud

15        In its eleventh cause of action, Country Visions

16   alleges Joli Grace and Stacie Lancaster fraudulently induced

17   Country Visions to enter into Franchise Agreements.  Counter-

18   defendants seek to dismiss this cause of action because the

19   economic loss rule precludes recovery.

20        The economic loss "rule 'prevent[s] the law of contract

21   and the law of tort from dissolving one into the other.'"

22   Robinson Helicopter Co., Inc. v. Dana Corp., 34 Cal. 4th 979, 988

23   (2004) (quoting Rich Prods. Corp. v. Kemutec, Inc., 66 F. Supp.

24   2d 937, 969 (E.D. Wis. 1999)).  It precludes recovery for "purely

25   economic loss due to disappointed expectations, unless [the

26   plaintiff] can demonstrate harm above and beyond a broken

27   contractual promise." Id.

28        Conduct "amounting to a breach of contract becomes

1   tortious only when it also violates a duty independent of the

2   contract arising from principles of tort law." <u>Id.</u> at 989

3   (quoting <u>Erlich v. Menezes</u>, 21 Cal. 4th 543, 551 (1999)).  The

4   California Supreme Court permits tort damages in contract cases

5   in several limited scenarios, including when a party procured the

6   contract through fraudulent inducement.  <u>Erlich</u>, 21 Cal. 4th at

7   551-52.  In such a case, "the duty that gives rise to tort

8   liability is either completely independent of the contract or

9   arises from conduct which is both intentional and intended to

10  harm." <u>Robinson</u>, 34 Cal. 4th at 990 (quoting <u>Erlich</u>, 21 Cal. 4th

11  at 552).  Thus, the economic loss rule does not bar a properly

12  pled fraudulent inducement claim.  <u>United Guar. Mortg. Indem. Co.</u>

13  <u>v. Countrywide Fin. Corp.</u>, 660 F. Supp. 2d 1163, 1188 (C.D. Cal.

14  2009) ("[I]t has long been the rule that where a contract is

15  secured by fraudulent representations, the injured party may

16  elect to affirm the contract and sue for fraud." (quoting <u>Lazar</u>

17  <u>v. Superior Court</u>, 12 Cal. 4th 631, 645 (1996))).

18      Here, claim eleven alleges Joli Grace and Stacie

19  Lancaster breached the Franchise Agreements by fraudulently

20  inducing Country Visions to enter into the Franchise Agreements.

21  (First Am. Countercl. ¶¶ 142-45.)  Since fraudulent inducement is

22  the violation of "a duty independent of the contract arising from

23  the principles of tort law," the economic loss rule does not

24  apply.  <u>Robinson</u>, 34 Cal. 4th at 989, 991 ("We hold the economic

25  loss rule does not bar Robinson's fraud and intentional

26  misrepresentation claims because they were independent of Dana's

27

28

1    breach of contract.").[6]

2           Accordingly, the court must deny counter-defendants'

3    motion to dismiss the fraud claim.

4           5.    Accounting

5           In its twelfth cause of action, Country Visions alleges

6    counter-defendants failed to properly account to Country Visions

7    using Country Visions's point of sale system as required by the

8    Franchise Agreements and must therefore account for all missing

9    sales in Joli Grace's Apricot Lane stores.  (First Am. Countercl.

10   ¶ 157.)  Under California law, a claim for accounting is not a

11   stand-alone claim.  Batt v. City & County of S.F., 155 Cal. App.

12   4th 65, 82 (1st Dist. 2007) (noting accounting "is not an

13   independent cause of action but merely a type of remedy, an

14   equitable remedy at that").  "Because [Country Visions's]

15   accounting claim is related to [one of its] breach of contract

16   claim[s], which [counter-defendants] do[] not address in [their]

17   motion to dismiss, the court will interpret this claim as a

18   prayer for relief attached to [its] breach of contract claim and

19   will not dismiss it at this time."  Rose v. J.P. Morgan Chase,

20   N.A., Civ. No. 2:12-225 WBS CMK, 2012 WL 892282, at *5 (E.D. Cal.

21   Mar. 14, 2012).

22          Accordingly, the court must deny counter-defendants'

23   _____

24          [6]     Counter-defendants rely on Multifamily Captive Group,
     LLC v. Assurance Risk Managers, Inc., 629 F. Supp. 2d 1135, 1145-
25   46 (E.D. Cal. 2009) (Damrell, J.), to argue that the economic
     loss rule will always preclude recovery of fraud claims when the
26   misrepresentations arose from the underlying contract and caused
     the injured party to enter into a contract.  However, such a view
27   ignores the California Supreme Court's position that the economic
     loss rule does not preclude recovery for fraudulent inducement.
28   Erlich, 21 Cal. 4th at 551-52; see Robinson, 34 Cal. 4th at 990.

1  motion to dismiss the accounting claim.

2         C.      Preliminary Injunction

3         Country Visions also seeks preliminary injunctions

4  against counter-defendants.  In order to obtain a preliminary

5  injunction, the moving party must establish (1) it is likely to

6  succeed on the merits, (2) it is likely to suffer irreparable

7  harm in the absence of preliminary relief, (3) the balance of

8  equities tips in its favor, and (4) an injunction is in the

9  public interest.  Winter v. Nat. Res. Def. Council, Inc., 555

10 U.S. 7, 20-21 (2008); Humane Soc. of the U.S. v. Gutierrez, 558

11 F.3d 896, 896 (9th Cir. 2009).  Injunctive relief is "an

12 extraordinary and drastic remedy, one that should not be granted

13 unless the movant, by a clear showing, carries the burden of

14 persuasion."  Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per

15 curiam).

16         1.   Preliminary Injunction Requiring the Turn-Over of

17              Hattiesburg Store or Prohibiting Blu Spero from

18              Operating in the Hattiesburg Store

19         Country Visions first seeks a preliminary injunction

20 against Stacie Lancaster and Joli Grace that requires them to

21 turn over the Hattiesburg store and lease pursuant to the terms

22 of the Hattiesburg Franchise Agreement or, in the alternative, a

23 preliminary injunction that prevents counter-defendants from

24 operating the Blu Spero store that is currently operating at the

25 Hattiesburg store location.

26         The court need not reach the merits of Country

27 Visions's requests.  Country Visions first seeks a mandatory

28 injunction--which is subject to a higher standard--ordering Joli

23

1  Grace and Stacie Lancaster to turn over the Hattiesburg Lease.

2  See Stanley v. Univ. of S. Cal., 13 F.3d 1313, 1320 (9th Cir.

3  1994) ("A mandatory injunction goes well beyond simply

4  maintaining the status quo pendent lite [and] is particularly

5  disfavored." (alteration in original) (citations omitted)).

6  Stacie Lancaster and Joli Grace already signed a document turning

7  over the Hattiesburg Lease to Country Visions when they signed

8  the Collateral Assignment of the Hattiesburg Lease.  (Stacie

9  Decl. Ex. 1, at 3-4 (Docket No. 32-1).)

10       The parties note that the Hattiesburg landlord did not

11  accept the Collateral Assignment, but Country Visions contends

12  that the landlord will accept a lease assignment upon an order by

13  the court.  The Hattiesburg landlord is not before the court,

14  however.  The court is unable to inquire into what will satisfy

15  the landlord and cannot compel the landlord's actions.  See

16  Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K., 757 F.2d

17  1058, 1061 (9th Cir. 1985) (vacating district court's order

18  granting preliminary injunction for lack of personal

19  jurisdiction); 11A Charles Alan Wright & Arthur R. Miller,

20  Federal Practice and Procedure § 2956 (3d ed.) (noting a court

21  does not have power to enjoin a non-party).  The court is not

22  going to draft, or order Joli Grace and Stacie Lancaster to

23  draft, an order or assignment of the Hattiesburg Lease that

24  satisfies the landlord.  Absent the landlord's presence in this

25  action, the court will not issue an affirmative preliminary

26  injunction requiring the assignment of the lease.

27       The court will also not enjoin the operation of the Blu

28  Spero store at the Hattiesburg store location.  A district court

1   has no authority to grant relief in the form of a preliminary

2   injunction where it has no personal jurisdiction over the

3   parties.  Paccar Int'l, 757 F.2d at 1061; see Ruhrgas AG v.

4   Marathon Oil Co., 526 U.S. 574, 584 (1999) ("Personal

5   jurisdiction, too, is an essential element of the jurisdiction of

6   a district . . . court, without which the court is powerless to

7   proceed to an adjudication." (alteration in original)).  "A

8   federal court may issue an injunction if it has personal

9   jurisdiction over the parties and subject matter jurisdiction

10  over the claim; it may not attempt to determine the rights of

11  persons not before the court."  Zepeda v. U.S. Immigration and

12  Naturalization Serv., 753 F.2d 719, 727 (9th Cir. 1985).

13       Here, in order to grant Country Visions's desired

14  relief--preventing the operation of a Blu Spero store at the

15  Hattiesburg store location--the court must have jurisdiction over

16  Love Grace.  Both parties agree that Love Grace, not Joli Grace,

17  currently possesses the Hattiesburg Lease and operates the Blu

18  Spero store at that location.  (Martin Decl. ¶¶ 3-5, Exs. A-B;

19  Stacie Decl. ¶ 5.)  The court cannot stop Joli Grace's operation

20  of a store it does not operate.  The court can only grant Country

21  Visions's injunction by enjoining Love Grace.  However, the

22  court's jurisdictional reach fails to extend to Love Grace and

23  the court cannot enjoin Love Grace.  The court therefore cannot

24  direct Love Grace either to turn over the Hattiesburg Lease or

25  cease operating the Blu Spero store.

26       Even if Country Visions could satisfy all the Winter

27  factors justifying extraordinary injunctive relief under Rule 65,

28  the court simply lacks jurisdiction over Arthur Lancaster and

1  Love Grace--whom Country Visions seeks to enjoin.  See Carranza

2  v. Brown, Civ. No. 3:14-0773 GPC BLM, 2016 WL 4376852, at *4-5

3  (S.D. Cal. Aug. 17, 2016) (refusing to issue an injunction where

4  the court lacks jurisdiction over the parties plaintiff seeks to

5  enjoin).  Accordingly, the court will deny Country Visions's

6  motion for a preliminary injunction requiring Stacie Lancaster

7  and Joli Grace to turn over the Hattiesburg Lease or preventing

8  counter-defendants from operating the Blu Spero store at the

9  Hattiesburg location.

10              2.   Preliminary Injunction Preventing Use of Apricot

11                   Lane Mark

12         Country Visions also seeks a preliminary injunction

13  against Joli Grace, Love Grace, Stacie Lancaster, and Arthur

14  Lancaster that prevents them from using the Apricot Lane mark in

15  connection with the Hattiesburg store.

16         A plaintiff "must establish that irreparable harm is

17  likely, not just possible, in order to obtain a preliminary

18  injunction."  All. for the Wild Rockies v. Cottrell, 632 F.3d

19  1127, 1131 (9th Cir. 2011) (emphasis in original) (citing Winter,

20  555 U.S. at 22).  "[A]ctual irreparable harm must be demonstrated

21  to obtain a permanent [or preliminary] injunction in a trademark

22  infringement action."  Herb Reed Enters., LLC v. Fla. Entm't

23  Mgmt., Inc., 736 F.3d 1239, 1249-50 (9th Cir. 2013).  Courts do

24  not presume irreparable harm once plaintiffs have shown a

25  likelihood of success on the merits.  Id. at 1250 ("Gone are the

26  days when once the plaintiff in an infringement action has

27  established a likelihood of confusion, it is ordinarily presumed

28  that the plaintiff will suffer irreparable harm if injunctive

1  relief does not issue.").

2        Here, there is no evidence that Joli Grace and Stacie
3  Lancaster continue to use the Apricot Lane mark at the
4  Hattiesburg store.  Stacie Lancaster and Joli Grace have stopped
5  operating the Hattiesburg Apricot Lane store, have assigned the
6  lease to Love Grace, and thus lack the ability to use the Apricot
7  Lane mark at the Hattiesburg store.  (Stacie Decl. ¶¶ 4-6.)
8  Country Visions has not shown that Stacie Lancaster and Joli
9  Grace are able to use the Apricot Lane mark in a way that would
10 likely cause irreparable injury to Country Visions.

11       Additionally, the court does not have personal
12 jurisdiction over Arthur Lancaster and Love Grace, so the court
13 will not enjoin them from selling products with the Apricot Lane
14 mark at the Blu Spero Hattiesburg store.

15       Country Visions has failed to meet the second prong for
16 a preliminary injunction.  The court does not need to address the
17 remaining prongs.  See Winter, 555 U.S. at 20-21 (holding a
18 plaintiff must establish that all four prongs are met and
19 irreparable harm is likely, not just possible).

20       IT IS THEREFORE ORDERED that Arthur Lancaster and Love
21 Grace's motion to dismiss be, and the same hereby is, GRANTED on
22 the ground of lack of personal jurisdiction.

23       IT IS FURTHER ORDERED that the Trust and Thornhill's
24 motion to dismiss be, and the same hereby is, GRANTED on the
25 ground of lack of personal jurisdiction.

26       IT IS FURTHER ORDERED that Stacie Lancaster and Joli
27 Grace's Rule 12(b)(6) motion to dismiss counter-claimant's first
28 amended counterclaim be, and the same hereby is:

1              (1)   GRANTED with respect to claims seven, eight, and

2                    nine; and

3              (2)   DENIED in all other respects.

4         IT IS FURTHER ORDERED that counter-claimant's motion

5  for preliminary injunction be, and the same hereby is, DENIED.

6         Counter-claimant has twenty days from the date of this

7  Order to file an amended counterclaim, if it can do so consistent

8  with this Order.

9  Dated:  November 30, 2016

10                              WILLIAM B. SHUBB
                               UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28